### GEORGE FESSENDEN *versus* CHARLES SAGER.

When, during the progress of a trial, one party's counsel has notice of communications between the other party and some of the jurors before whom the cause is being tried, but goes on with the trial without objection, he thereby consents to abide the result.

ASSUMPSIT for damages occasioned by being thrown from a hearse through the viciousness of the defendant's horse hired by the plaintiff for the purpose of being driven in a hearse. The verdict was for the plaintiff.

The cause came before this Court on a motion to set aside the verdict as against the weight of evidence, and also because of certain communications between the plaintiff and some of the jurors.

The testimony in support of the latter motion was substantially as follows : —

*Rufus Sweetsir, sworn.* — Was foreman of second jury in case of *Fessenden* v. *Sager*.

Was in Mr. Harlow's store, on Fore street, and Mr. Harlow, one of the jury, or I, proposed that we should go up and see where the accident occurred. We got abreast of the hearse-house, and went in. Several men in there. No one I knew except Fessenden, the plaintiff, and him I never knew before this trial. Some of them were measuring distances. Took no notice of the distances. Some one, can't say who, called my attention to the hearses there. Think Fessenden spoke of the hearses. Can't recollect what he said. I said, I came to see for myself. Have no recollection of what was said.

*Question by Rand.* — Did Mr. Fessenden make any statements in your hearing?

*Answer.* — Can't say that he did. Some one did, but I can't recollect what it was. Mr. Fessenden made no statements that I can remember. Am not certain whether he did or not. Can't say they did or did not make any statements about the measurements of distances. We were

there about five minutes. Can't say who came away first. Am not positive that Fessenden said anything, but think he did call our attention to the hearse.

Think we met some other jurymen as we walked up there. Can't say that Mr. Fessenden made any statements to me in reference to this suit. He made some remarks to some one there, not directed to me particularly. Some of them there had measures. Know that Mr. Fessenden, the plaintiff, was there. Think Mr. Fessenden said something about the hearse to some one there, in my hearing.

Am not able to swear that Mr. Fessenden made any statements in reference to this suit, to me or any one in my presence. Don't know that Mr. Fessenden made any in my hearing. Think I heard Mr. Fessenden talk something about the hearse, but haven't the least recollection what it was. As we walked up South street, and turned to the left, some one showed us where the accident occurred. Can't say it was Fessenden. Think he was in the company. Mr. Harlow and I then came to the Court House. We came away before any horse was there.

Nothing that Mr. Fessenden said to me had any influence upon me in regard to my verdict, or anything I heard at the hearse-house.

*Edward Harlow, sworn.* — Was one of the jury that tried case of *Fessenden* v. *Sager*, and the person referred to who went with Mr. Sweetsir. I was in my place of business in the morning, and Mr. Sweetsir came in. We were in conversation some time, and he was about to leave, when I asked him if he wouldn't like to go up and see where this occurred. We walked up Fore street, and into South street. Didn't see Fessenden before we went. Never spoke to the man or knew his name before. Went to the hearse-house; found these people there. Some of the sextons were there, and Mr. Stillson and Mr. Bunce. Fessenden was there, Sager and Rumery were not there. Fessenden kept his tongue running considerable. I made up my mind not to hear what he said, and I kept away from him. Mr. Sweet-

sir and I came out into South street, and proceeded up to Spring street; got to the rear of Anderson's, and there I think I heard Mr. Fessenden speak about his getting off and going round the horse, same as he testified. We got as far as where they said the accident happened. Fessenden went through Oak street, as far as Free street, with us. He then left us. Fessenden, the only one with us. Don't know what Fessenden was doing when he went into the hearse-house. Don't recollect that they were measuring the wheels at that time. Nothing said there had any influence on my mind. Did not know when I went there any one was there at the hearse-house. Did not see Sager or Rumery there. As we left, heard some one say he would stop and see the horse tackled into the hearse. It was not Fessenden. Think some one measured the wheels while I was there. The size of the wheels had been a matter of testimony before the jury the day before. Went there at nobody's request. Went to gratify my own curiosity. Was acquainted with the location. Mr. Sweetsir was not. Have stated all I recollect that Fessenden said. Either Stillson or Bunce had a rule to measure with. Don't think we were there over five minutes. Know nothing about why Bunce and Stillson came there. Don't recollect of seeing any other of the jury there. Don't know who were there when Rumery went with the horse. Saw no horse there.

*John Rand, Esq.,* sworn. — Recollect of naming to you (Howard) the fact of Mr. Fessenden's having been down there with some of the jurymen. Asked you to ascertain what the facts were. Heard he had been down there with some of the jurymen, — not that he had carried them there, but he had been there. After I spoke to you about it, you went and talked with Mr. Fessenden about it. Mr. Howard, when he came back, said he had frightened his client, and his client said he hadn't said anything of consequence. He had been there. After that I don't recollect you said Mr. Sager had been there with several of the jury, or with the horse. Have no recollection of your telling this to me.

Don't recollect of asking you if you objected. Haven't the slightest recollection of your saying anything about Sager's having been there. Knew Rumery had been there. Don't think you spoke anything to me about this after we came in. Don't remember of the conversation between Mr. Cleaves and myself.

I do remember now of having some conversation with Mr. Cleaves, but cannot tell where it was.

*Nathan Cleaves, Esq., sworn.* — Mr. Howard spoke to me, and said he had been informed that Mr. Fessenden had been to the hearse-house with some of the jurymen. This was as we were sitting down to the trial. After hearing this, I said to Mr. Rand, " well, I hear Sager has been down, and harnessed the horse in the presence of some of the jury. Have the impression that he spoke to Sager about it, but am not certain. He replied that it was with some of the other jury. I said I guessed neither of them had done anything very improper, and he said, I guess not. The trial immediately proceeded.

*George Fessenden, plaintiff, sworn.* — On Saturday morning of last week, I went to the hearse-house alone. I went over to measure the shafts, completed that, and was returning, when I saw Mr. Rumery near corner of Oak street with two or three with him. He had a measuring stick in his hand. Rumery is clerk for Mr. Sager, and is the one who was witness. I think a hackman, I cannot call him by name, and another were with him; went back with them. Found Mr. Bunce, Mr. Stillson, Andrew Rich, and several of the undertakers there, and several others, some of whom I did not know. They went to measuring. Think some of the jurymen were there. Don't know who. Didn't know their names; think they were some of the jury who tried this case. Saw the horse there. Didn't see Sager there. Rumery was there. He held the horse. Tillson measured. Saw Harlow and the foreman there. They came while we were in the hearse-house. Didn't know they were coming. Didn't know any jurymen were coming, and had not heard of any

one coming. Think Mr. Harlow addressed me, and said he came over with the foreman to look at the route. First I saw of Mr. Harlow and the foreman they were on corner of Spring and South street.

I walked up the street with them, and when I got opposite the place I stopped and said, "there is where I got off to examine the horse." I was then on my way home. They walked up to the corner of Oak street, to the lamp-post where I struck. I told them where the horse struck, and then he threw me off, and I passed through Oak street and went home. Had no further talk with them than what I have named. Saw the horse there, and saw him harnessed. The same horse I had. Did not see Sager there. The horse was harnessed in by Rumery. The jurymen were not there then. Did not, to my knowledge, say anything to the jury. There were half a dozen, or eight or ten in there, all talking together. Couldn't tell what they said. Had no conversation down there with these two jurymen, or any other, in regard to the case. Heard Sager swear he was down there that morning when the horse was put in.

Had been a witness on the stand before that morning, and told my story. Had stated as a witness where I got off and examined the horse. Had also stated where I was thrown off, and how.

*J. & E. M. Rand,* for the defendant, contended that the testimony shew an attempt to influence the minds of the jurors, and the verdict should be set aside, and cited *Hilton* v. *Southwick,* 17 Maine, 306; *Studley* v. *Hall,* 22 Maine, 198, and cases there cited.

*Howard & Cleaves,* for the plaintiff, cited R. S., c. 82, §§ 69, 73 & 75; *McLellan* v. *Crofton,* 6 Maine, 307; *Doloff* v. *Stimpson,* 33 Maine, 546; *Parsons* v. *Huff,* 38 Maine, 137; *Goodwin* v. *Cloudman,* 43 Maine, 577; *Jeffries* v. *Randall,* 14 Mass., 205; *Merrill* v. *Burkshire,* 11 Pick., 269; *Davis* v. *Allen,* 11 Pick., 468; *Orrok* v. *Com. Ins. Co.,* 21 Pick., 471; *White* v. *Woods,* 8 Cush., 414; *Kent*

v. *Charlestown*, 2 Gray, 281; *Allen* v. *Blunt*, 2 W. & M., 148.

DANFORTH, J.—It seems from the testimony reported that, during the progress of the trial, defendant's counsel had notice of some communication between the plaintiff and some of the jurors. This was sufficient, at least, to have put him upon inquiry, and, by consenting to go on with the trial without objection, he consents to abide the result, as the authorities cited for plaintiff abundantly show; especially those of *Hallock* v. *Franklin*, 2 Met., 560, and *Fox* v. *Hazelton*, 10 Pick., 275. The verdict does not appear to be so clearly against the weight of evidence as to authorize us to disturb it. *Motions overruled.*

*Judgment on the verdict.*

APPLETON, C. J., CUTTING, WALTON, DICKERSON and TAPLEY, JJ., concurred.