## HENRY RICKER, Appellee, v. T. E. DAVIS, Appellant.

**Evidence:** BOOKS OF ACCOUNT: ORIGINAL ENTRY. A ledger account may be a book of original entry, although made up by posting from other slips. And where a ledger was admitted on condition that the original slips from which it was made up should also be produced, one relying upon the fact that the slips were not produced as an objection to the admissibility of the ledger waived the objection by failing to move that the book be stricken from the evidence.

**Same.** Deposit slips of a bank and the passbook of a depositor are admissible, in an action for overdrafts, to show that defendant had been given credit for all his deposits, although not covering all the transactions of the parties.

**Attachment:** COUNTERCLAIM FOR WRONGFUL ATTACHMENT: EVIDENCE. In an action to recover overdrafts and also the amount of certain notes, in which as grounds for attachment it was alleged that defendant had, or was about to dispose of his property with intent to defraud, or to place the same beyond the reach of creditors, and to which defendant pleaded a counterclaim for the wrongful attachment, evidence that defendant had sold plaintiff other notes than those in suit, which he had fraudulently altered and which the maker refused to pay for that reason, was admissible on the issue of reasonable belief that the grounds of the attachment were true.

**Same.** It is competent to show on an issue of wrongful attachment on the ground that defendant had, or was about to dispose of his property with intent to defraud, or to place it beyond the reach of his creditors, that he had taken advantage of the bankruptcy law at about the time of the transaction involved in the suit.

**Instructions.** Where the court properly instructed on all matters material to the issue, a party who made no request cannot complain that a proper application of certain evidence was not pointed out in the instructions.

**Attachment:** COUNTERCLAIM FOR WRONGFUL ATTACHMENT: EVIDENCE. Where the defendant sets up a counterclaim for the wrongful issu-

ance of an attachment he has the burden of proving that ,the grounds of the attachment were untrue; and even though the plaintiff offers no evidence on that question the defendant cannot recover without affirmative proof of their falsity.

**New trial:** MISCONDUCT IN ARGUMENT: BILL OF EXCEPTIONS. Remarks of counsel in argument to the jury cannot be shown by affidavit; they ·must be made to appear from a bill of exceptions signed by the court, or if the court refuses to sign then it may be signed by by-standers.

**Same:** MISCONDUCT WITH JURY. The affidavits of parties concern-ing the misconduct of counsel toward the jury during the progress of the trial, and filed in support of a motion for new trial, will not be considered on appeal when not shown by a, bill of exceptions; as it is the duty of the trial court to pass upon the evidence in sup-port of a new trial and to prepare the record for review by the appellate court.

**Same:** MISCONDUCT: WAIVER OF ERROR. Where counsel for one of the parties knew that the attorney for the other, during an inter-mission in the trial, carried the jury in his automobile to a pic-nic, failure to raise an objection to the same until after the verdict was a waiver of the error.

**Same:** DUTY OF COURT. Where counsel for one of the parties in-formed the court that one of the jurors had requested him to take members of the jury to a picnic during an intermission in the trial, and sought advice as to the propriety of so doing, the court should have assumed the responsibility and directed counsel to refuse; as the court should guard against all suspicion of unfair-ness in the trial.

*Appeal from Sioux District Court.*—HON. DAVID MOULD, Judge.

WEDNESDAY, FEBRUARY 19, 1913.

ACTION to recover on an alleged overdraft and upon two promissory notes executed by defendant to plaintiff. Proper allegations having been made for an attachment, a writ was issued, which was levied upon defendant's property. De-fendant admitted the making of the notes in suit, but denied

the overdraft, and, alleging that the grounds for attachment were false and untrue, filed a counterclaim for the wrongful suing out of the attachment. Upon these issues, the case was tried to a jury, resulting in a verdict and judgment for plaintiff, and defendant appeals. *Affirmed.*

*Geo. T. Hatley*, and *Evans & Evans*, for appellant.

*T. E. Diamond*, and *Gerrit Klay*, for appellee.

DEEMER, J. Plaintiff is a private banker, doing business in the town of Granville. Defendant was a resident of that town, and conducted a milk and cream station under the name of the Glendale Dairy Company and the Granville Produce Company. He did his banking business with the plaintiff, making deposits and issuing checks and borrowing money upon his individual notes. Plaintiff claims that, at the time this action was commenced, defendant had overdrawn his checking account to the amount of $811.28. He also averred that on March 24, 1909, defendant and one Williams duly executed and delivered to plaintiff a promissory note for the sum of $200, bearing interest at the rate of 8 per cent., which note matured some time prior to the commencement of this suit. He also claimed that on July 5, 1910, defendant executed and delivered to him another note in the sum of $105, bearing the same rate of interest as the other note, and maturing October 1, 1910. The original petition was in three counts, and was based upon the alleged overdraft and these two notes. As the grounds for attachment, plaintiff alleged: "That the defendant has disposed of his property, in whole or in part, with intent to defraud his creditors; that the defendant is about to dispose of his property with intent to defraud his creditors; that he is about to convert his property, or a part thereof, into money for the purpose of placing it beyond the reach of his creditors; that he has property or rights in action which he conceals."

Upon these allegations, a writ was issued against defendant's property; and, the necessary bond having been given, it was levied upon certain personal property belonging to defendant, and thereunder Graff Bros. were garnished as supposed debtors of defendant. Defendant appeared to the action, and in his answer denied the alleged overdraft, and pleaded that plaintiff was indebted to him on account of moneys deposited. He admitted the execution and delivery of the two notes, but averred that they were fully paid by the deposits which he made, and that he was entitled to have the same canceled because of the damages done him in wrongfully suing out the attachment. He further pleaded a counterclaim upon the attachment bond, alleging that the attachment was wrongfully and maliciously sued out, and that he was damaged thereby in the sum of $1,500. Thereafter plaintiff filed an amendment to this petition, in which he set out two more notes executed by various parties, which defendant had sold and indorsed to him, and alleged that the said notes had been altered by defendant, and that by reason thereof he was liable to plaintiff in the amount thereof, to wit, $40 and $35, respectively, with interest. He also alleged an additional ground for attachment, by adding to the grounds already stated the following: "That the same is due for property obtained under false pretenses." As pleaded, this amendment related to all the debts upon which plaintiff sued. Upon defendant's motion, the amendment, which introduced the new causes of action, was stricken out; but the additional ground for attachment incorporated in this amendment was allowed to stand. Thereafter defendant amended his answer and counterclaim, making it more specific, and also making it apply to the new and additional ground of attachment. In reply, plaintiff denied the allegations of the counterclaim. Upon the issues thus tendered, the case was tried to a jury, resulting in a verdict for the plaintiff in the sum of $1,064.88. The jury also made the following special findings: "Interrogatory 1.: What amount do you find due the plaintiff on the

causes of action set up in the petition? Answer: $1,064.88.
Interrogatory 2: What amount, if any, do you find due de-
fendant on count of his counterclaim? Answer: Nothing.
Interrogatory 3: What amount, if any, do you find due the
defendant on count 3 of his counterclaim? Answer: Noth-
ing.    A. B. Dehann, Foreman.'' Count 2 of the counterclaim
was for money claimed to have been deposited by defendant
with plaintiff, for which he had received no credit, and count
3 was the action on the bond for the wrongful suing out of
the attachment.    After the verdict was returned, defendant
filed a motion for a new trial, in which he claimed the ver-
dict was without support; that he should have had an allow-
ance on his counterclaim; that the court erred in its rulings
on evidence, and in the instructions given, and, as further
ground, claimed that plaintiff's counsel were guilty of mis-
conduct in giving some of the jurors, who tried the case, an
automobile ride; and in referring in his argument to matters
not of record.    This motion, which was supported by affi-
davits, and attempted to be met by affidavits *contra,* was over-
ruled, and judgment was entered upon the verdict.    Defend-
ant appealed, and his counsel are relying upon many alleged
errors of the trial court.    To such as are deemed important
or controlling, we shall now devote our attention.

To the end that the matter may be more easily understood,
we shall refer to the two notes included in the plaintiff's
original petition as Exhibits A and B, and to the two which
plaintiff thereafter sought to bring into the case by amend-
ment as Exhibits C and D.    There were also other exhibits
in the record identified alphabetically, and running down as
far as the letter ''H,'' and others marked by numerals down to
and including Exhibit 4.    Exhibits 3 and 4 are passbooks
of the Glendale Dairy Company and the Granville Produce
Company, respectively, and the second Exhibit A is a loose
leaf ledger kept by plaintiff.    Exhibit D is composed of 58
deposit slips of the Granville Produce Company, and Exhibit
E is composed of seven slips of the Glendale Dairy Company,
and Exhibits G and H, of the shorthand reporter, are the same

as Exhibits C and D, being the notes referred to in plaintiff's amendment to the petition.

I.   It is contended that the trial court erred in admitting Exhibit A, the loose leaf ledger kept by the plaintiff, and Ex-

1. EVIDENCE: books of account: original entry.

hibits D and E, the deposit slips kept in the bank.   The testimony with reference to these exhibits was to the effect that the loose leaf ledger contained what purported to be the accounts of the companies in whose name defendant was doing business, made up each day from the deposit slips, some of which were made out by the defendant, some by his wife, and some by appellee.   After plaintiff had been examined, cross-examined, and re-examined regarding his manner of keeping books, the trial court made the following ruling on the defendant's objections to the leaves from the book and the deposit slips: "I think if the plaintiff produces the deposit slips from which these are taken, and offers that with the book, that they will be admissible—the deposit slips.   By Mr. Hatley:  When he gets the right foundation in, they may be admitted.   By the Court:  Subject to the production of the deposit slips, it may go in.   Defendant excepts."   In view of the testimony as to the manner in which plaintiff kept his books, which need not be reproduced, we think there was no error here.   Moreover, the defendant did not thereafter move to strike the exhibits from the record, as he should have done had be been relying upon the fact that deposit slips were not produced showing the basis for each entry on the ledger.   That a ledger may be a book of original entry, although the items may be taken from other slips, see *Veiths v. Hagge*, 8 Iowa, 163; *Hancock v. Hintrager*, 60 Iowa, 374; *Gifford v. Thomas*, 62 Vt. 34 (19 Atl. 1088); *Ladd v. Sears*, 9 Or. 244.

There was no error in admitting the deposit slips, although they did not cover all the transactions between the parties.   Defendant's passbooks were also admitted in evi-

2. SAME.

dence, and, save as to three or four items, they agreed with plaintiff's books, and in no event was there any prejudice in the rulings complained of.

II.   Although the causes of action introduced by the amendment to the petition were stricken, the trial court, over defendant's objection that the notes known as Exhibits C and D to the petition or reporter's Exhibits G and H were incompetent and immaterial, allowed them to be offered and read in evidence.  These notes were brought into the case when plaintiff was called, in rebuttal, to meet the testimony given by defendant in support of his counterclaim.  They were not offered as a part of plaintiff's main case, but to show that plaintiff had reasonable grounds to believe some one or more of the grounds for attachment to be true.

3.  ATTACHMENT: counterclaim for wrongful attachment: evidence.

The testimony with reference to these notes was as follows:

A.   I got this note about April 1, 1909, from T. E. Davis, and paid him for it.  I notified the maker, and he said he never gave the note to Davis.  The note he signed was to A. J. Westfall.  I asked him to pay, and he refused.  I bought Exhibit H the same day of T. E. Davis.  Smith admitted that he signed both Exhibits G and H, and refused to pay both notes.  He claimed the name of Westfall was written in the space where T. E. Davis now appears, at the time he signed both Exhibits G and H.  When the first note came due, I went with Smith to see Davis, and left them talking about it. I went back to the bank.  .  .  .   At the time I bought the notes G and H from Mr. Davis, I bought a third note.  I didn't take out a cent of discount.  I don't remember telling Mr. Davis that Henry Smith was not very good.  I don't remember, when Mr. Smith paid the first note, that Henry Smith claimed Westfall's name was taken out and Davis' name put in.  When the second note came due, Smith came in and repeated his objection that Westfall's name was scratched out.  I sent him two notices to collect the two notes.  I made no further effort. When the third and last note came due, I notified him.  He didn't pay either one of them.  At the time Smith was in and talked about the notes, Davis said he would take the separator away from him under the mortgage clause in the notes.  I can't remember any conversation in reference to my taking the separator away from Smith.

Smith was called as a witness, and he testified as follows:

I am acquainted with T. E. Davis. Had a business transaction with him. Witness identified two promissory notes (Exhibits 'G' and 'H'). The signatures to said notes are mine. They are not in the condition now they were when I signed them. The name of 'A. J. Westfall' was in the place, at that tme, where the name of 'T. E. Davis' now appears, in both 'G' and 'H.'

Remembering the grounds for the attachment, and having in mind that plaintiff was justified in suing out the writ, if he had reasonable grounds, as an ordinarily careful and prudent person, to believe any of them to be true, we are of the opinion that the trial court did not err in admitting this testimony. Of course the added ground of attachment, "that the same is due for property obtained under false pretenses," had reference to the causes of action stated in the original petition, for the notes C and D were stricken from the amendment to the petition. But testimony of the character which plaintiff was permitted to introduce, also had a bearing upon the issues as to plaintiff's having reason to believe some of the other grounds for attachment to be true.

III. When plaintiff was called in rebuttal to meet the case made by defendant on his counterclaim, the following record was made:

4. SAME.

Q. Now, at the time you signed this petition asking for an attachment against Mr. Davis, did you know that he had been through bankruptcy about 1908 or 1909? (Objected to as incompetent, irrelevant, and immaterial, no ground for attachment. Objection overruled. Defendant excepts.) A. Yes, sir. Q. Do you remember of receiving a check for collection signed by the defendant, T. E. Davis, and drawn on the Colton State Bank of South Dakota for $40, within a year or two prior to the attachment? (Objected to as incompetent, irrelevant, and immaterial and leading. Objection overruled. Defendant excepts.) A. Yes, sir. Q. What did Davis say about the check? (Objected to as incompetent, irrelevant,

and immaterial, and too long prior to the swearing to the petition for attachment.   Objection overruled.)   A. I don't remember; but he told me to return it, that he did not owe it. Q. You may state whether you received any notes for collection, in the last year or two, from the Independent Harvester Company against Mr. Davis. (Objected to as incompetent, irrelevant, and immaterial, and too remote. Objection overruled. Defendant excepts.)   A. Yes, sir.   They were sent to me twice.   There was $300 in notes.   Q. What did Davis say about the note?   (Objected to as incompetent, irrelevant, and immaterial.   Objection overruled.   Defendant excepts.)   A. He instructed me to write the company to cut out one share and send back two, and he would sign a note for it.   I returned it to the company.   Westfall claimed Davis owed him $300. Q. How much does he owe F. H. Williams?   A. Williams claims that he owes him $200.   They never had any settlement on the Sioux City business.   (Defendant moves to strike the answer as incompetent, irrelevant, and immaterial and hearsay.   Objection overruled.   Defendant excepts.)   Q. State what information you got from Mr. Williams.   (Defendant objects.   Objection overruled.   Defendant excepts.)   A. Mr. Williams was on a note with him.   Davis refused to pay it.   I tried to collect from Williams, and Williams claimed that he owed him money besides that note.   Q. Did you have any conversation with Davis shortly before you sued out this attachment, in regard to settling his overdraft?   A. Yes, sir. I asked him for it, and he said he had a $500 note coming due in Dakota.   He was going up there, and when he came back he would pay me.

Complaint is made of the ruling permitting plaintiff to prove that defendant had taken advantage of the bankruptcy law in the year 1908 or 1909.   This action was commenced June 28, 1911, and the transactions upon which it is bottomed occurred during the years 1909, 1910, and 1911.   The grounds for attachment were many, and involve the question of fraud, actual or intended.   Such an issue necessarily opens wide the door, especially where, as here, plaintiff was justified in relying upon defendant's conduct and upon what he said, not only at or about the time the action was commenced, but for

a reasonable time prior to the bringing of the suit. There was no prejudicial error here.

In this connection, defendant contends that the trial court should have instructed the jury as to the proper application of this testimony to the issues made by the pleadings.

5. Instructions.     As he did not ask such an instruction, he is in no position to complain, for all matters material to the issues, as framed, were properly submitted; and, if defendant desired an instruction with reference to the effect of any certain testimony, he should have asked for it.

IV.   The court, in its charge, submitted the case on the theory that one of the grounds for attachment was that the debt due plaintiff was for property obtained under false pretenses. This is complained of for the reason that this issue was stricken from the amended petition. The record, however, is conclusive against defendant's contention. This part of the petition was not stricken, and plaintiff was entitled to have his case submitted on the issues tendered; the burden being upon the defendant to show that the allegation was not true, and that plaintiff had no reasonable grounds to believe it to be true. Without any testimony from defendant on this subject, he would fail on his counterclaim. Defendant says, however, that plaintiff introduced no testimony, other than that with reference to the notes C and D, to show that any debt was obtained through false pretenses, and that the trial court was in error in submitting the issue. This argument is answered by the simple statement that the burden was upon the defendant to show that the allegation was untrue; and, if he failed to do this, he was not entitled to a verdict on his counterclaim. It may be that all defendant was required to do in the first instance was to show that none of the grounds for attachment were, in fact, true; this done, he would have made out a *prima facie* case, and it would then be incumbent on plaintiff to go ahead with his testimony

6. Attachment: counterclaim for wrongful attachment: evidence.

as to his grounds for belief of their truth, these resting in his own mind and breast, on penalty of an adverse verdict, based upon the *prima facie* case made by defendant. · But it was certainly incumbent on defendant, in the first instance, to make a *prima facie* case by negativing all the grounds for the attachment. The defendant moved the court for a verdict on the issue as to whether or not the debt was incurred for property obtained by false pretenses, on the theory that plaintiff had introduced no testimony to sustain such an issue, save as to the notes included in the amendment to the petition, which was stricken. Were it not for the fact that the burden was upon the defendant to prove that the debt sued upon and the property in the case were not for property obtained under false pretenses, there would be no doubt of the correctness of defendant's position. But, in such actions as this, a defendant, who interposes a counterclaim upon an attachment bond, clearly has the burden of proving a negative, and no presumption comes to his aid, as in many other forms of action, that he was not in fact guilty of any fraud or misconduct authorizing the attachment. There was no error here, as the authorities abundantly show. *McCormick v. Colliver,* 75 Iowa, 559; *Deere v. Bagley,* 80 Iowa, 197; *Cawker Bank v. Jennings,* 89 Iowa, 230; *Mayne v. Bank,* 80 Iowa, 710.

V. The last and only other proposition in the case is the alleged misconduct of counsel for plaintiff in argument and in taking some of the jurors, during the pendency of the trial, in his automobile for a ride, a short distance into the country, to attend a picnic. This claimed misconduct is sought to be shown by affidavits attached to defendant's motion for a new trial, which were met by affidavits from plaintiff in resistance thereto. Defendant's counsel presented to the trial court a form of certificate or bill of exceptions reciting the facts as he claimed them to be, and asked the trial court to sign it. This the trial court refused to do, remarking that: "The recollection of the court, as to what occurred during the argu-

7. NEW TRIAL: misconduct in argument: bill of exceptions.

ments of the case, is so vague that he is unable to sign the certificate asked for in regard to what occurred during the argument, and therefore refuses to sign the same. The court further refuses to sign the certificate in regard to what occurred in chambers, for the reason that he has already signed an affidavit as to those matters, and that affidavit is a matter of record. Defendant excepts.''

It is well settled that remarks of counsel, during the argument of a case, cannot be shown by affidavit. And it is the duty of the court, in such cases, to find, if he can, what the remarks were, and to embody them in a bill, or otherwise make them of record. *State v. Watson,* 102 Iowa, 651; *State v. Burton,* 103 Iowa, 28; *Frank v. Davenport,* 105 Iowa, 588; *De Wulf v. Dix,* 110 Iowa, 553; *State v. Keenan,* 111 Iowa, 286. If the court will not sign the bill, bystanders may do so. Code, section 3753. The record does not disclose that the trial court was absent during the argument; hence the exception to the foregoing rule, suggested in *Faulk v. Iowa County,* 103 Iowa, 442, does not apply. Manifestly the alleged misconduct in argument cannot be considered.

As to the alleged misconduct of counsel with certain jurors, the trial court, as will be noticed, refused to sign any bill, saying that he had made an affidavit as to the facts, and that his affidavit was a matter of record. Turning to the abstract, we find the following affidavit in support of defendant's amendment to his motion for a new trial:

8. SAME: misconduct with jury.

I, David Mould, first being sworn, depose and say that I am one of the judges of the Fourth judicial district of Iowa, and am the judge of said judicial district who presided at the trial of H. Ricker, Plaintiff, v. T. E. Davis, Defendant, in the September term of the Sioux county district court, 1911. That on adjourning court for the noon hour on the 15th day of September during the trial of said cause, I announced that court would stand adjourned until 4 o'clock p. m. of that day, so as to give the jurors, who sat in the trial of said cause, an

opportunity, as well as counsel and other parties, to attend the picnic northwest of Orange City, Iowa. That shortly after dinner during said adjournment, T. E. Diamond, one of the attorneys for the plaintiff, came to me in chambers at the Orange City courthouse and stated that some of the jurors wanted him to take them out to said picnic then being held northwest of Orange City, Iowa, above referred to. My recollection is that I told him, 'I see no objection to it, but, of course, there must be no talk about the case.' As Mr. Diamond started to leave the office, I called him back and said to him, 'If you see Mr. Hatley or Mr. Evans (defendant's counsel), speak to them about it so there will be no misunderstanding.' David Mould.

Duly verified.

The grounds for the motion were as follows:

Third. That the honorable David Mould, the judge who presided at the trial, erred in giving the plaintiff's counsel, T. E. Diamond, permission to take a part of the jurors, then sitting in the trial of said cause, for a ride in his automobile to the picnic northwest of Orange City, Iowa, as his guests, without the knowledge or consent of the defendant or his attorneys. That, by reason of said permission so given, the defendant was greatly prejudiced, and all as shown by 'Exhibits D and E' hereto attached and made a part hereof and the second herein. Fourth. That the plaintiff's counsel, T. E. Diamond and Gerrit Klay, were each guilty of misconduct during the trial of said cause by referring in their arguments to the jury to the fact that the defendant had recently been indicted for uttering certain notes, known as the Smith notes, and that said indictments had been dismissed. That said statements so made by said attorneys were made over the objection of the defendant, and all as shown by the second and by 'Exhibit D,' which is hereto attached and made a part hereof. H. A. Evans and Geo. T. Hatley, Attorneys for Defendant.

Conceding that we may consider this affidavit from the judge as a part of the record, it does not follow that we may so treat the other affidavits filed *pro* and *con*.

In *State v. Watson,* 102 Iowa, 655, we said: "Certain remarks said to have been made by the judge are complained of. These alleged statements are attempted to be shown by affidavit of counsel, which was not made part of the record by bill of exceptions or otherwise. We have frequently held that such matters cannot be made of record in this manner. *State v. Bigelow,* 101 Iowa, 430; *State v. Le Grange,* 99 Iowa, 10."

Again in *State v. Burton,* 103 Iowa, 30, this court said:

The only other question presented in behalf of the appellant relates to alleged misconduct of attorneys for the state in improper statements in the arguments to the jury. The alleged misconduct is shown only by affidavits, and is not set out in the bill of exceptions. We have frequently held that we would not consider charges of such misconduct which occurred, if at all, in the presence or within the knowledge of the court, unless it was shown by bill of exceptions. That rule was first announced by us in *Rayburn v. Railway Co.,* 74 Iowa, 641, and has since been approved and followed in numerous cases, both civil and criminal. *State v. Bigelow,* 101 Iowa, 430; *State v. Helm,* 97 Iowa, 378; *State v. Le Grange,* 99 Iowa, 10. We held in *State v. Whalen,* 98 Iowa, 662, that affidavits of jurors, attached to a motion for a new trial, became a part of the record by being filed with the motion to which they were attached. That conclusion was based upon the provisions of section 4482 of the Code, which refers to criminal cases. We did not hold, however, that, by making an affidavit a part of the record in that manner, it becomes competent evidence. There is a wide difference between making a paper a part of the record and making it competent evidence to prove a fact. In *State v. Le Grange,* 99 Iowa, 10, we held that, although affidavits which charged that the court had made improper remarks during the trial were made of record by filing them, yet they were not competent to show the alleged misconduct; that, as what was said was necessarily known to the court, the remarks in question should have been embodied in a bill of exceptions. What was there said in regard to remarks by the court is applicable to statements made by attorneys in the presence of the court. It

is said, however, that no objection was made in the district court to showing the statement objected to by means of affidavits, and that the state filed counter affidavits, thereby waiving any objection, which might otherwise have been urged to the method of preserving the statements, which was adopted, and that the appellant does not make any objection to the counter affidavits, but asks that they be considered. In the case of *Rayburn v. Railway Co., supra,* counter affidavits had been filed; yet the effect of filing them was not regarded as a waiver of the right to object to the competency of the affidavits. We conclude that we have no competent proof of statements made by attorneys in argument, and we cannot say that there was any misconduct of which complaint is made.

In *De Wulf v. Dix,* 110 Iowa, 558, the court said:

One of the grounds of the motion for a new trial was misconduct of plaintiff's counsel in his argument to the jury. The alleged misconduct is attempted to be shown by affidavit. It is well understood that this is not proper practice. *State v. Hall,* 79 Iowa, 674; *Hall v. Carter,* 74 Iowa, 364; *State v. Clemons,* 78 Iowa, 123. The affidavits were incorporated in the bill of exceptions; but this is not sufficient, where the alleged misconduct took place in the presence of the court, as we must presume it did in this case. *State v. Burton,* 103 Iowa, 28; *Faulk v. Iowa County,* 103 Iowa, 442; *State v. Le Grange,* 99 Iowa, 10. The bill itself, as signed by the judge, does not show any misconduct. Appellee's counsel filed an affidavit reciting the facts, as he understood them, pertaining to the alleged misconduct. If it be true that he is bound thereby, notwithstanding the defect in the bill of exceptions— a point we do not at this time decide—there is no such showing as will justify us in interfering with the discretion of the trial judge in overruling the motion.

See, also, *Nelson v. Railroad Co.,* 77 Iowa, 405; *State v. Clemons,* 78 Iowa, 123; *Knaebel v. Wilson,* 92 Iowa, 536; *State v. Le Grange,* 99 Iowa, 10; *State v. Bigelow,* 101 Iowa, 431; *State v. Whalen,* 98 Iowa, 662.

Conceding that we may consider the affidavit made by the trial judge as a part of the record as to what occurred,

it does not follow that the other affidavits may be considered, and without them it is clear that no misconduct is shown. It is quite important, in such cases, that the trial court make a finding of the facts attempted to be shown by affidavit, and to make this finding of record. Many times he alone can know the facts; and, in all cases of dispute, we are entitled to know upon what his final conclusion is based. So far as possible, appellate tribunals, in actions of law, should be relieved from settling disputed questions of fact; and, in the absence thereof, it will be assumed that the trial court was fully justified in its rulings, in so far as they involve purely fact questions.

But conceding, for the purposes of the case, that the court found all the facts as defendant claims them to be, and that plaintiff's counsel was guilty of misconduct in taking the jurors in his automobile for a ride, either with or without the consent of opposing counsel, or assuming that the trial court was in error in permitting or directing counsel to do so, it yet appears that defendant's counsel was fully advised of this misconduct before the case was submitted to the jury; that they made no complaint thereof, but proceeded with the trial as if nothing of the kind had occurred, taking their chances on an adverse verdict, although knowing as well then, as after the verdict was returned, that some of the jurors were incompetent to sit because of the misconduct of the judge or of counsel for the other side. Speaking of a like situation, this court in *Hahn v. Miller*, 60 Iowa, 96, said:

9. SAME: misconduct: waiver of error.

The jury were taken to view the *locus in quo*. In the motion for a new trial, plaintiff complains of misbehavior of the defendant, alleging that he rode in the sleigh with the jury upon their return, and pointed out the course of a creek, and that he offered, in the presence of the jury, to have a witness point out the premises, which plaintiff's counsel declined. The evidence upon the motion fails to show anything further than that defendant rode with the jury and counsel on both sides of the case; but the allegation that he

said anything to the jury, or in their hearing, is not sustained. Without the consent of the other party or his counsel, possibly he ought not to have ridden in the sleigh; but as no objection was made at the time by plaintiff, when he could have prevented the act, we think it ought not now to be urged as a ground for disturbing the verdict.

Again in *Foedisch v. Railroad Co.*, 100 Iowa, 728, we said:

Even if the conduct of the jurors complained of could be said to be prejudicial to plaintiff, he is in no situation to now avail himself of it. It appears, without dispute, that the alleged misconduct was known to plaintiff a day or two before the trial was concluded. He took no steps to call it to the attention of the court. He seems to have been willing to go on with the trial, taking his chances of a favorable verdict, making no objection until after he is defeated. Knowing, as he did, of the misconduct, and proceding thereafter with the trial without objection, he should be held to have waived his right to insist upon it. *Stewart v. Ewbank*, 3 Iowa, 191; *Riley v. Monohan*, 26 Iowa, 507; *Mehan v. Railroad Co.*, 55 Iowa, 305, (7 N. W. 613); *Riech v. Bolch*, 68 Iowa, 526, (27 N. W. 507); *Koester v. City of Ottumwa*, 34 Iowa, 41. This is the rule in other jurisdictions. *Bourke v. James*, 4 Mich. 336; *Hallock v. County of Franklin*, 2 Metc. (Mass.) 560; *Fox v. Hazelton*, 10 Pick. (Mass.) 275; *Easley v. Railway Co.*, 113 Mo. 236, (20 S. W. 1073); *Wynn v. Railway Co.* 91 Ga. 344, (17 S. E. 649); *Fessenden v. Sager*, 53 Me. 531; *Scott v. Waldeck*, 11 Neb. 525, (10 N. W. 409); Id., 32 Neb. (Unof.) 5, (10 N. W. 413); *Stampofski v. Steffens*, 79 Ill. 303. (See, also, to the same point, *State v. Baker*, 135 N. W. 1097.)

The record shows that defendant, through his counsel, knew of the misconduct at the time it occurred, yet they went ahead with the trial, and made no reference to the matter, until the argument was being made; and, at that time and before the submission of the case to the jury, they knew of the alleged misconduct of the judge, and did not object thereto, presumably preferring to take the chances on a ver-

dict rather than to complain thereof. We are not to be understood as approving or commending either counsel or judge in this matter. Counsel for plaintiff; according to his showing, was placed in an embarrassing position, because, as he says, some of the jurors asked him to take them out to the picnic in his auto, and he could not well refuse without some excuse. He went to the judge with the matter, and was given the permission referred to in the judge's affidavit. He claims to have complied with this condition, so far as he could.

In our opinion, the trial judge should have shouldered the responsibility and directed counsel not to take the jurors out, even on their request. Courts cannot be too careful in avoiding all suspicion of partiality or unfairness, and counsel should be scrupulously free from any conduct which would seem to place a juror under any obligation to him, either express or implied. Such has been the holding of this court in previous cases—*Doyle v. Burns,* 123 Iowa, 488; *Stafford v. City,* 57 Iowa, 748; *Welch v. Taverner,* 78 Iowa, 207; and we are not disposed to in any manner relax the rule. Defendant is not entitled to complain in this case, however, because, first, the alleged misconduct is not properly shown; and, second, even if shown, defendant did not make timely objections, but consented to have the case tried to incompetent jurors.

10. SAME: duty of court.

Finding no reversible error, the judgment must be, and it is, *Affirmed.*