ARTHUR DUFFY, Appellant, v. HARDY AUTO COMPANY et al., Appellees.

**TRIAL:** Objections and Exceptions—Failure to Enter—Effect.
1 Failure to except, within three days, to a ruling on a motion, works a complete waiver of all objections to such ruling. So held on a ruling on a motion to transfer equitable issues. Section 3749, Code, 1897.

**LIENS:** Creation by Statute—Automobile Repairs. Whether one
2 has a lien, under Section 3130, Code, 1897, on an automobile for repairing the same, *quaere.*

**LIENS:** Forfeiture—Bailment for Repairs—Excessive Claim.
3 Claiming, in good faith, a lien on an article for repairs, in an amount in excess of what is ultimately found to be due, does not work an entire forfeiture of the lien.

**LIENS:** Evidence—Sufficiency. Evidence reviewed, and held sufficient to establish a right to a lien on an automobile for repairs thereto.

**EVIDENCE:** Books of Original Entry—Ledger. A so-called "ledger" may constitue a book of original entries.

*Appeal from Pocahontas District Court.*—D. F. COYLE, Judge.

TUESDAY, JUNE 26, 1917.

THIS action was brought originally by plaintiff against defendants for the conversion of an automobile, in which plaintiff demanded $1,250. Defendants answered, and, by cross-petition in equity, asked the foreclosure of a lien on said automobile for $248.25 for repairs and services on the

automobile, furnished by defendant company. At the same time, defendant filed a motion to transfer to equity the equitable issue presented by the cross-petition, in order that the equitable issue might be tried first. Appellant states that, in so far as this case is concerned, the issues are simply those raised by the motion to transfer to equity, and the ruling thereon, after which the case was tried in equity on the issues raised by the cross-petition to determine whether or not defendants were entitled to a foreclosure of their alleged lien. Defendants deny plaintiff's claim that defendants are seeking to foreclose a common-law lien, but contend that they rely on a statutory lien, as well as a common-law lien. The court found that, prior to the institution of this suit, plaintiff was indebted to defendant in the sum of $201.21 for labor and material furnished for said automobile; that the defendant was entitled to the foreclosure of its lien in the sum of $146.70, and was entitled to a judgment against the plaintiff in the sum of $201.21. A special execution was ordered for the sale of the automobile to satisfy the lien, and that a general execution issue for the balance of the judgment and costs. The motion to try the equitable issue first was sustained. A further statement of facts will appear in the opinion. The plaintiff appeals.—*Affirmed.*

*V. P. McManus* and *Kenyon, Kelleher & Price,* for appellant.

*J. M. Barry* and *Robert Healy,* for appellees.

PRESTON, J.—1. First, as to the motion to try the equitable issue first: There is some confusion, and evidently a mistake in the dates, in the abstract in regard to this, and it has not been corrected by the additional abstract. The record is that the case was tried on the merits on January 26, 1916, and that the motion to

1. TRIAL: objections and exceptions: failure to enter: effect.

try the equitable issue first was sustained in November, 1916, or about ten months after the case was tried on the cross-petition. The answer and cross-petition were filed in May, 1915, and the motion was filed on the first day of May, 1915; so that we shall assume that the ruling on the motion was in November, 1915, instead of 1916, as stated in the abstract.

Appellees contend that no exception was taken to the ruling of the court sustaining the motion, and that, for that reason, that question may not now be presented for determination. The abstract recites that the ruling on the motion "was made by the court in the absence of counsel. At the time of the trial, an exception was taken to said ruling, but the court failed to note the exception of record." From this record, it appears that appellant does not claim that any exception was taken at the time of the ruling, nor for about two months thereafter, or until the trial in January. Code Section 3749 provides that:

"The party excepting to the decision must do so at the time it is made, unless it is upon a motion or demurrer, in which case it may be taken within three days."

As said, no claim is made that an exception to the ruling on the motion was taken within the time prescribed by the statute. From the record, it further appears that, when the case came on for trial in January, the plaintiff objected to proceeding with the trial on the issues raised by the answer and cross-petition in equity, because the original petition was filed in November, 1914, and the answer and cross-petition were not filed until May, 1915, and, further, because the cross-petition raises no issue which is not cognizable and could not be tried and determined in the law action first brought. But it seems to us that the objection at that time was not good, because such an objection would have been such as could have been made as against the motion itself. The ruling on the motion had

been made some two months before. The court did not transfer the cause from the law to the equity calendar, and the plaintiff's claim still stands on the law side for trial, unless the determination of the cross-petition adjudicates the claim set up in plaintiff's petition. Section 3435 of the Code provides that, where the action has been properly commenced by ordinary proceedings, either party shall have the right by motion to have any issue heretofore exclusively cognizable in equity, tried in the manner hereinafter prescribed in cases of equitable proceedings; and, if all the issues were such, though none were exclusively so, the defendant shall be entitled to have them all tried as in cases of equitable proceedings. We think appellees' contention at this point ought to be sustained. *Gate City Land Co. v. Heilman,* 80 Iowa 477.

Furthermore, though we do not determine the point, it would seem as though the motion was properly sustained. The cross-petition asked the enforcement and foreclosure of a lien, which could not well be done in a law action. The defendants refused to deliver the automobile to the plaintiff because they claimed a lien on the machine for repairs. Whether this adjudicates the plaintiff's claim, as set out in his petition, that there was a conversion of the machine by the defendants, we do not determine, for the reason that that question is not before us and has not been argued.

2. As stated, appellant contends that

2. Liens: creation by statute: automobile repairs.

the cross-petition sought to foreclose a common-law lien, and that this may not be done in equity. We think this question is disposed of by what has been said on the motion to try the equitable issue first. However, appellees contend that a common-law lien on an automobile exists in favor of a mechanic, whether a garage keeper or not, who supplies labor and materials for the repair of the car, as long as he retains the possession of it, and cite *Aldrich v. Jenkins,* 171

Ill. App. 310; *Rehm v. Viall,* 185 Ill. App. 425.

And they contend that they were not relegated to their common-law lien alone, but that they are entitled to a statutory lien, under Section 3130 of the Code, providing that:

"Property transported by, or stored or left with, any forwarding and commission merchant, express company, carrier or bailee for hire shall be subject to a lien for the lawful charges thereon for the transportation and storage thereof, or charges and services thereon or in connection therewith;" etc.

On this proposition, they cite *Fox v. Smith,* 143 Ga. 547 (85 S. E. 856), *Broom v. Dale,* (Miss.) 67 So. 659, and other cases. We are inclined to this view, but deem it unnecessary to determine the point, because we have already determined that appellant is not in a position to present the question as to the trial of the cross-petition in equity.

3. LIENS: forfeiture: bailment for repairs: excessive claim.

3. The claimed lien of defendants for repairs was somewhat larger than the amount ultimately found by the court on the trial, and it is contended by appellant that the defendants should have been held to the exercise of good faith in their attempt to enforce their lien, and that items were included in the claim for which a lien was demanded and disallowed, and that, therefore, the entire lien should have been rejected. Mechanics' lien cases are cited to support this proposition. The theory of such cases seems to be that the statute providing for mechanics' lien requires that the claimant must file a just and true statement. But we think that, in this case, there is nothing to show bad faith on the part of the defendants in making the larger claim. As we understand the holding of the trial court, some of the items claimed for, while they were furnished by defendants, could not properly be claimed as a lien, because the warranty under

which the machine was sold was so broad that some of these items were necessary in order to comply with the warranty.

4. LIENS: evidence: sufficiency.

4. It is next contended by appellant that the evidence on behalf of the defendants was insufficient to sustain their claim, and that the preponderance of the evidence sustained the contention of plaintiff. This is the point most seriously argued. This involves the determination of a fact question; and, as we have often said, it is not our practice to attempt to review the testimony, since it can serve no useful purpose, and would extend the opinion beyond proper limits. We shall, therefore, content ourselves with a brief statement of the claims of the parties, with some brief observations as to our views of the testimony, but without attempting to cover the entire question as to the disputed fact questions.

It appears that, in July, 1913, defendant company sold the automobile in question through its salesman, one Morrison. Appellant contends that, in making the sale, Morrison agreed, substantially, to keep the car in good running order for a year, free of charge; that the tires would run 3,000 miles; that, if the car did not keep in order, or if the tires did not run 3,000 miles, everything would be replaced, unless plaintiff ran the car into a ditch and broke it; that any poor workmanship on the car or any fault of the factory would be made good, without expense to plaintiff, for a year, and so on. The salesman denied making any of the warranties alleged, save that he gave them a written guarantee that, in the event that the car proved defective in material or workmanship within a year, the manufacturers of the car would replace the parts, free of charge,—the regular manufacturer's warranty,—and that he would make good any fault of the car within a year from the sale. Appellants contend, and introduced evidence tending to sup-

port their claims, that the machine did not work according to the agreement as they claim it to have been, and that all the work or repairs performed by defendants was necessary to make it comply with the agreement; except that they claim that, after the car had been used a year or so, they made an agreement with defendants to substantially reconstruct the car, and that they were to pay defendants $35 therefor, and that, for that amount, defendants were to place a magneto on the car, and would only charge for 'the labor of the employee in putting the magneto on, not to exceed 1½ days of labor, and that the car would be placed in first-class condition, without further charge except $35. The trial court found against plaintiff as to this last item, and that the defendant agreed to keep the car in repair substantially as claimed by plaintiff, but that such agreement should not be held to include repairs which were made necessary by reason of the negligence of the plaintiff.

The plaintiff complained that, at the start, he had trouble with the clutch, and that he took the car to the defendants' garage, and that there was trouble with the lighting system and the starter. Plaintiff says he took the car back to defendants and asked them to fix it, from 5 to 8 times. The plaintiff also claimed that the batteries were not charged, and it did not run, but the evidence on behalf of defendants tends to show that it was because the machine was not properly supplied with gasoline and not properly operated. Plaintiff also complained that the radiator leaked, and says that defendants came to his house 2 or 3 times to put the car in order. Plaintiff testifies that he never asked defendants to make any repairs except to keep their contract, except in regard to the magneto. Perhaps some other complaints are made, but this, in a general way, shows plaintiff's claim in regard to the car.

On the other hand, defendants contend that a part of the troubles at least were due to the way in which the ma-

chine was operated. It appears that plaintiff had never run an automobile before the purchase of the car in question, was a farmer, and he says that he did not understand the mechanical features of an automobile. There is but little dispute, if any, in the evidence that, at one time, one of the Duffys was unable to stop the car, and ran over a cement sidewalk and into the stone abutments of a store building. A disinterested witness testifies that the cement sidewalk was 8 inches above the street level. The frame of the car was broken, but just how this was done is not shown by the record, except that there is a statement made by the plaintiff that his brother John broke it, running over a tile ditch. One of the defendants testifies that, at one time, one of the Duffys ran into defendants' garage, while going at the rate of 20 miles an hour, and crashed into an automobile inside the garage; that Duffy blamed the brakes, but witness says that the brakes were immediately tried in the presence of Duffy, and it was found that the brakes worked properly. Duffy denies the rate of speed, and says that he was going at the rate of 1½ miles an hour. Witnesses who appear to be disinterested testify to having seen the Duffy car driven at various times on a flat tire, and at a high rate of speed while driving on a flat tire. The evidence shows that there were a number of dents in the rims, indicating hard usage, such as having driven on a flat tire, or on the rim without a tire. The court found, and we think the preponderance of the evidence sustains the finding, that the casings for which a charge was made were rim cut, and that defendants were under no obligation, under the agreement, to furnish the new casings which were furnished, and charged plaintiff with $20.25 for this item. This was before the expiration of the year. The court further found that plaintiff should not be charged with any other repairs or labor until after the expiration of the year, or down to August 20, 1914.

The other items for which the court allowed a recovery were charges after that date. The court also found that, at the time plaintiff claims to have delivered the car to defendants for repairs, for which, as he contends, he was to pay but $35, the car was delivered to defendants for general repair, as well as for the purpose of placing a magneto thereon, and that this was without any specific agreement as to what it would cost, and that neither party intended or understood it to be binding upon defendant in making his final charges. The evidence shows that, at that time, the frame of the car was broken. We think plaintiff's theory at this point is improbable, since, as the court found, if the frame was broken, plaintiff would not have been likely to have delivered the car to defendant solely for the purpose of placing a magneto thereon. We have not attempted to cover all the details; but, without further discussion as to the facts, it is our conclusion, after reading the record, that the finding of the trial court at this point was right.

5. It is contended by appellant that

5. Evidence: books of original entry: ledger.

the proper foundation was not laid for defendants' books of account, and that, therefore, the account was not proven. There was evidence as to some of the items, independent of the books. The defendants' method of keeping books was described in detail, and, while it is true that the book produced was called a ledger, yet there was no day book. Entries were made on this so-called ledger from slips. We shall not go into the evidence in detail at this point. We have held that a ledger may be a book of original entry, although made up by posting from other slips. We think, under this record, and the holding in *Ricker v. Davis*, 160 Iowa 37, that the books were admissible.

There was no error, and the judgment of the district court was right. This being so, the judgment is—*Affirmed*.

Gaynor, C. J., Weaver and Stevens, JJ., concur.