STATE OF IOWA, Appellee, v. GLEN B. PECK, Appellant.

No. 44617.

APRIL 2, 1940.

REHEARING DENIED SEPTEMBER 27, 1940.

F. E. Northup, for appellant.

Fred D. Everett, Attorney General, Jens Grothe, Assistant Attorney General, and Z. Z. White, County Attorney, for appellee.

BLISS, J.—Prior to his assignment for the benefit of credit-

ors on July 20, 1937, the defendant was the sole owner and operator of the Peck Motor Sales Company at Storm Lake, Iowa, engaged in selling Oldsmobile automobiles. This had been his business for several years. He maintained a branch at Spencer, and one at Milford. There were 14 counties in his territory, and he did quite a large volume of business, with the help of an office force of four or five and three or four salesmen. In January 1937 he arranged with the S & M Finance Company of Fort Dodge, Iowa, to finance some of his automobile sales. Two officers of the finance company called upon him at that time, and solicited the business, and discussed the plan of operation, and left with him a supply of the various written instruments necessary for the completion of each transaction. While the defendant claims that he knew but little about the usual methods of financing the purchases, it may be reasonably inferred from the amount of business that he did, and his years of experience in the sale of automobiles, that he was quite familiar with the financing plan. He gave but part of his business to the Fort Dodge company. He had previously operated with the Securities Investment Company of Omaha in financing sales.

On October 25, 1937, a county attorney's information was filed against the defendant alleging that on March 8, 1937, he falsely and fraudulently represented to the S & M Finance Company that he had sold to Louie B. Weiland a 1937 Oldsmobile sedan, describing it by serial and motor numbers, and that the alleged purchaser had executed a conditional sales contract on the automobile in the sum of $742, and that the automobile was the property of the defendant when sold to Weiland, and had been delivered to and was then in the latter's possession. The information alleged that all of these representations were false when made and were then known to the defendant to be false and were made with the intent to defraud and to obtain from the said finance company the sum of $742; that the said company relied upon said representations and was deceived and induced thereby to pay to the defendant the sum of $700 in purchasing said automobile paper, when in fact no

such sale to Weiland had been made, and the defendant on March 8, 1937, did not own this automobile but had sold and delivered the identical automobile to the Northwestern Gravel Company of Lake Park, Iowa, on March 4, 1937. Defendant admits that he did not own the said automobile on March 8, 1937, and that he did not then sell it to Weiland, and admitted that he had previously sold it on March 4, 1937. His defense was that on February 17, 1937, financing papers had been made on this car, which had been used as a demonstrating car, and that when it was sold to the gravel company, he told Weiland, who was one of his salesmen, to take another car for demonstration purposes, and to get the serial and motor numbers off of this car and give them to the bookkeeper and have her substitute these numbers in the said financing papers, for the numbers of the car sold to the gravel company. Weiland testified that he put the numbers on the spindle on the bookkeeper's desk, but that she inadvertently failed to make the change. The bookkeeper was not called as a witness. The defendant said that he assumed that the correction had been made. The jury's verdict of guilty is definite proof that its members did not believe defendant's version of the transaction.

The general routine used in a financing transaction, and the one used in the transaction on which the information was based was as follows: The conditional sale contract and assignment bears the date of March 8, 1937. It was executed by Weiland, as the purchaser, and by the Peck Motor Sales Company by Glen B. Peck, the defendant, as the dealer. It recites the sale by the dealer to the purchaser of "one new 1937 Olds 2 door, serial number K415291, motor number F718091, 6 cylinder" sedan, for which the purchaser agreed to pay $742 at the office of the S & M Finance Company of Fort Dodge in accordance with a certain negotiable note of even date with the contract. This note signed by Weiland, and indorsed "without recourse" to the finance company by the Peck Motor Sales Company by the defendant, was attached by perforation to the conditional sales contract. In the contract, the defendant, as the dealer, warranted "that said property is free and clear

of all liens and encumbrances except only this conditional sale contract.'' Therein the defendant, as dealer, also stated:

"For value received, the dealer hereby sells and transfers this contract and said note and all right, title and interest of the dealer in and to said property to the S & M Finance Company.''

This contract was acknowledged by both the defendant and Weiland before the bookkeeper of defendant, as notary public, not on February 17, 1937, but on *March 8, 1937*.

The defendant also executed under date of *March 8, 1937*, a printed instrument with blanks filled by typewriting, described as a warranty, naming Weiland as the purchaser, and describing the car as in the conditional sale contract, and stating:

"To S & M FINANCE COMPANY, Fort Dodge, Iowa.

"For the purpose of inducing you to discount the attached note and contract signed by the following named purchaser, the undersigned submits the following statement and warrants that said note and contract arose from the sale of a motor vehicle as described, that said motor vehicle is in the possession of the undersigned or said purchaser and is free and clear of all liens and encumbrances of whatsoever character except only the contract securing said note. The undersigned further warrants that the down payment made by purchaser as stated below was in cash and not its equivalent, * * *.''

There is no evidence that Weiland made a down payment of any kind or in any amount. On the opposite side of this written instrument, is set out what is called "Purchaser's Statement". It bears date of February 17, 1937, and is a questionnaire calling for information about his debtor which a creditor might wish to have. It is signed by Weiland and the answers are in his handwriting. Weiland testified that Exhibit 5, the conditional sales contract dated March 8, 1937, and Exhibit 6, the "warranty" signed by defendant, dated March 8, 1937, and the "purchaser's statement" on the back thereof,

signed by Weiland, bearing date of February 17, 1937, were all executed at the same time to his best recollection. The conditional sales contract and assignment, and the note of the purchaser, and the "warranty" of the dealer, and the "purchaser's statement", were all placed in a sight draft envelope which was sealed. On the face or outside of this envelope was the following sight draft:

"S & M Finance Co.                                        No..........
"Fort Dodge, Iowa.                          Date March 8, 1937
"Pay to the
    order of Security Trust & Savings Bank of Storm Lake,
    Iowa $700.00.........................................
    Seven hundred and no/100........................Dollars
"To:  S & M Finance Co.          Peck Motor Sales
      "Fort Dodge, Iowa                (Dealer)
" (Payable through Fort Dodge       Per Glen B. Peck
    National Bank, Fort Dodge,
         Iowa)                  " (official title)..........."

This sight draft was signed by the defendant. It was deposited in the Security Trust & Savings Bank of Storm Lake, Iowa, in which the defendant's deposit and checking account, in the name of Peck Motor Sales Company, was kept, and the ledger sheet of that company from the bank's books, and the deposit slip of the company, under date of March 9, 1937, show a deposit or credit in its account of $700. The sight draft envelope and contents were sent by the Storm Lake bank through the usual channels, to the Fort Dodge National Bank. Upon its receipt by the latter, it notified the S & M Finance Company, which at once sent over its check for $700, dated March 11, 1937, payable to the Fort Dodge National Bank, and received in return the sight draft envelope with its contents. The contents appearing regular on their face, the finance company accepted them and permitted the proceeds of its check to be sent to or credited to the Storm Lake bank to reimburse it for the credit allowed by it to the defendant.

To impeach the bona fides of this transaction, the State

introduced in evidence the car invoice slip of the defendant, bearing date of March 4, 1937, showing the sale of this identical car to the Northwestern Gravel Company for $984.46, including sales tax and license fee, which was paid by $453.96 in cash, $513, by trade in, and $17.50 for the license, all shown on the invoice as paid on March 4, 1937.

The State also introduced a memorandum of the sale, showing the purchaser and describing the car, signed and acknowledged by the Peck Motor Sales Company before its bookkeeper as notary public on March 4, 1937, and also introduced the gravel company's application for a license for this car, sworn to before this bookkeeper-notary on March 4, 1937.

To show that the transaction, on which the criminal charge against the defendant was based, was part of a plan to defraud the finance company, the State offered testimony of two other transactions very similar to the Weiland transaction in every particular. One of these is referred to in the record as the De Voss-Proost deal. John Proost, of Schaller, Iowa, paid for and received from defendant an automobile on March 20, 1937. Proost testified:

"I made this purchase and had my dealings with Glen B. Peck and Glen B. Peck was present when I was given a memorandum to show the transfer of title. * * * I personally checked the number on the motor with my own eyes and wrote it down."

Helen De Voss, a 22-year-old typist in defendant's office, on March 29, 1937, executed a conditional sales contract and promissory note for $657, and also the "purchaser's agreement." She testified that she saw the defendant sign the contract, indorse the note, and sign the "warranty". She also testified that at the solicitation of defendant she typed her occupation in her purchaser's statement as that of "beauty operator." She never purchased, paid for, nor received an automobile. The papers executed were on forms identical with those used by Weiland, and by the same method used in his

transaction, $600 was transferred from the funds of the finance company to the bank account of the defendant. The automobile described in the finance papers was the identical car which had been sold to Proost.

The other similar transaction is known in the record as the Lowderbaugh-Mester deal. R. M. Lowderbaugh of Lake View, in Sac county, bought and received an automobile from defendant on December 18, 1936. He testified that "he had his dealings in regard to the automobile purchased on December 18, 1936, with Mr. Peck and that he went to Mr. Peck's office at the time he made the purchase and at the time plaintiff's Exhibit 'C-1' [memorandum of sale] was made out and that he went up to his office when he made the deal and the deal was finished. Mr. Glen Peck was there when I signed the license application. I had the car in my possession which I purchased from Glen B. Peck on December 18, 1936, up until last Saturday." The trial was begun on May 10, 1938.

Finance papers on this very car were executed on April 17, 1937, by Leo J. Mester and the defendant, similar in every respect to those in the other two transactions, and $600 was in the same manner withdrawn from the funds of the finance company to defendant's bank account. Mester testified:

"On April 17, 1937, I was employed at the Peck Motor Sales and I signed Exhibits 'C-3' [conditional sales contract and note for $657] and 'C-4' [purchaser's statement, and warranty statement of defendant] in the office of the Peck Motor Sales Company garage and Mr. Glen B. Peck was present when I signed Exhibits 'C-3' and 'C-4.' "

The defendant's signature was identified on all of these exhibits.

I. Defendant's first assignment of error relates to the testimony of the secretary of the finance company that in his talk with the defendant in January 1937 the latter told him there would be no bad paper, and that he relied on this statement. Defendant's objection to this testimony was overruled, but later on defendant's motion was stricken, and the

jury was then told and later instructed to disregard this and all testimony stricken from the record. There was no error in this.

II. The defendant also assigns error and complains that the secretary was permitted to testify that when he received the Weiland financing papers he relied upon them as being genuine, as they purported on their face to be, and in accordance with the understanding and conversations had with Peck in reference to handling this business, and that if he had not relied thereon he would have recalled the company's check from the Fort Dodge bank, and returned the papers to defendant. This testimony was material and competent. The papers sent were false tokens, and false representations of existing facts, and contained misrepresentations and false statements. We have held that one who gives a check upon a bank in which he has no funds, nor any expectation that he will have any funds therein, with the intention of procuring money thereon, is guilty of obtaining money by false pretenses. State v. Foxton, 166 Iowa 181, 147 N. W. 347, 52 L. R. A., N. S., 919, Ann. Cas. 1916E, 727; Mulroney v. Weeks, 185 Iowa 714, 171 N. W. 36. In such instance there is neither an express written nor verbal misrepresentation, but the false circumstances existing and the inferred representation that the check will be honored are in themselves held sufficient to justify conviction. See also State v. Huckins, 212 Iowa 283, 287, 234 N. W. 554. In the case before us we have written false statements as to existing facts, and the mere fact that they are connected with an earlier promise that the contracts which he would in the future send would be as they appeared on their face, did not render the testimony inadmissible.

III. Defendant assigns error on the admission of testimony of the assistant cashier of the Storm Lake bank, and the admission of deposit slips, loose leaf ledgers, etc., from the bank's records. These records were clearly admissible. See Ricker v. Davis, 160 Iowa 37, 139 N. W. 1110; Farmers Trust & Savings Bank v. De Wolf, 212 Iowa 312, 233 N. W. 524;

Duffy v. Hardy Auto Co., 180 Iowa 745, 163 N.W. 370; 22 C. J. 869, 870.

IV. Defendant assigns error because the court overruled his motion for a directed verdict which alleged that under the whole record the charge of the State was not established. There was ample evidence to support the verdict of the jury.

Defendant has assigned other errors, based upon the claim that the venue was not in Buena Vista county but was in Webster county; also that there were errors in instructions given and refused. We have carefully considered all of these assignments of error, and it is our judgment that there is no error in any of them. The defense was ably submitted by defendant's counsel, the jury was fully and fairly instructed, and it is our conclusion that the judgment ought to be, and it is hereby affirmed.—Affirmed.

HAMILTON, C. J., and HALE, SAGER, OLIVER, MILLER, STIGER, and RICHARDS, JJ., concur.