## KOESTER v. THE CITY OF OTTUMWA.

1. Corporation municipal: EXCAVATIONS IN SIDEWALKS. A city cannot avoid its liability for injuries received by an individual from falling into an excavation in a sidewalk insufficiently barricaded, by showing that the barricades in question were such as were customary among builders; nor is evidence of such fact admissible. The question upon which the liability of the city depends is, whether it was negligent in fact.

2. Instructions: REFUSAL OF. It is not error to refuse instructions, the principles of which are embodied in those given by the court.

3. New trial: CONFLICTING EVIDENCE. The verdict of a jury will not be disturbed by the supreme court on the ground that it is not sustained by the testimony, unless it is so manifestly against the weight of evidence as to show it to have been the result of passion or prejudice.

4 Verdict and jury: MISCONDUCT OF JUROR. The mere fact that one of the jurors in a case, in pursuance of a previous invitation, took dinner and supper with one of the attorneys of the appellee, during the progress of the trial, will not vitiate the verdict.

*Appeal from Wapello Circuit Court.*

THURSDAY, MARCH 28.

ACTION to recover for injuries received by falling into an excavation in the sidewalk, alleged to have been carelessly and negligently left unguarded. The defendant denied the allegations of carelessness, etc., on its part, and averred that plaintiff was careless and negligent. Trial to jury; verdict and judgment for plaintiff for $2,000. The defendant appeals.

*Eugene Fawcett* and *William McNett* for the appellant.

*H. B. Hendershott* and *J. W. Dixon* for the appellee.
VOL. XXXIV—6.

COLE, J. — The plaintiff, who had never before been there, arrived at the city of Ottumwa about noon, on the 28th of October, 1870. He took dinner at the depot hotel, and remained about there with a friend, until between six and seven o'clock in the evening. He then started to go to a hotel in the city, and was pursuing the route he had been directed when he received the injury sued for. In his route, on the westerly side of Market street, between Front and Second, a brick building was being erected; in front of this building an excavation for an area had been made about ten feet wide, from forty to sixty feet long, and from six to seven feet deep; a stone wall eighteen to twenty inches thick had been built along the front and ends of this area and the dirt thrown over and against it, leaving the wall about a foot above the surface of the street. About ten feet from this wall and in the street were mortar beds, brick piles, etc., and beyond, between these and the sidewalk on the opposite side, was sufficient street way to afford passage for teams, vehicles, etc. Footmen ordinarily passed along between the wall and the mortar beds, etc. At the ends of this walled area, and about waist high, were fastened joists, two by twelve inches, and about twelve feet long, extending from the building the whole width of the walk and more, but there was nothing guarding the wall lengthwise between the area and the street. As the plaintiff came to the area on the sidewalk, he found the joist obstructing his progress and turned toward the street and was just then told by a person, casually there, to keep straight ahead. He kept along the joist till he reached the end of it and then turned up the street, and after going a little way, perhaps thirty or forty feet, and getting into some mud, he stepped up on to the wall, and after going a few steps, fell into the area, broke his collar bone and otherwise injured himself. There is even more than the usual conflict in the evidence as to the time in the evening, and

CORPORATION<br>MUNICIPAL:<br>excavation in<br>sidewalk.

the state of the weather when the accident occurred. About half the witnesses fix the time at seven or after, and the other half at a little after six. And, again, about half say it was dark and cloudy, with a drizzling rain, while the others say it was not dark, was not raining, and was starlight.

During the progress of the trial the defendant's counsel asked the witness to "state whether or not it is customary among builders to barricade the front area walls of buildings in any manner differently from that in which this area wall was barricaded, and whether or not the usual barricades were erected at this wall at the time of the injury to plaintiff?" This was objected to, and excluded on the ground that it was immaterial; and this ruling is the first error assigned. The point in issue was, as to whether the defendant had been negligent in fact. If the custom in that city had been to do *more*, in the way of barricading, than ordinary care and prudence required, the defendant, nevertheless, would not have been liable if it had done only what ordinary care and prudence required. It would not have been compelled to comply with the custom. So, on the other hand, if the custom had been to do *less*, simply doing that would not excuse the city. It must exercise ordinary care. Custom will not require it to do more, nor excuse it for doing less. This would be especially so as to this plaintiff, who is shown to have been an entire stranger to the city and its customs.

II. The defendant's counsel asked five instructions, which were refused by the court. Error is now assigned upon such refusal. The court gave to the jury twenty-six instructions, which we find, upon a careful examination and comparison with those asked and refused, to embody every principle stated in the latter. Indeed, the instructions, as a whole, impress us with the idea that the court below was very careful not to state the law too strongly against the defendant. It is not necessary for us

2. INSTRUCTIONS: refusal of

to copy the several instructions and show how those given embrace those refused.    Surely the defendant has no cause for complaint upon the instructions as a whole.

III.  The appellant also assigns as error, that the verdict is contrary to the evidence.    If we were to sit as triers of the fact *de novo*, whether the plaintiff was himself negligent, upon the evidence and instructions as we have them in the agreed abstract furnished us, we should find for the defendant.    But this is not the question before us.    The question for us to decide, upon this assignment of error, is whether the verdict is so manifestly against the weight of evidence as shows it to be the result of passion or prejudice, and not of due consideration of the testimony.    The plaintiff was not negligent as a matter of law.    That is to say, if the night was dark and rainy, as some of the witnesses testify, and the plaintiff on finding the barricade left the sidewalk, as he was warned to do by it, and had gone such a distance as to justify a belief that he had passed the danger of which the barricade warned him, and in his efforts, in the dark, to return to the sidewalk, or to ascertain whether he might do so with safety, he met with the accident causing the injury, whether he was careless or not would be a question of fact for the jury, and not a question of law for the court.    In other words, a barricade across a sidewalk is a warning of danger there, but it may not be a warning of danger forty, sixty, a hundred, or five hundred feet from it.

*3. New trial: conflicting evidence.*

IV.  It is shown by affidavits that one of the jurors in the case took dinner and supper with one of the counsel for plaintiff, during the progress of the trial.    No communication between the juror and counsel, on the subject of the action, is claimed; on the contrary, it is affirmatively shown that none was had.    It further appears that the counsel was engaged with the juror in doing some writing for him connected with a guardianship accounting, when he was called as a juror in

*4. Verdict and jury; misconduct of juror.*

the case; that the counsel was doing business for the juror was known then, and before, to one of the counsel for defendant, and was known to both of them, as was also the fact that the juror had dined and supped with him, long before the trial was closed; but no objection was then made. It also appears that the plaintiff's counsel had invited the juror, before he came, to stop with him during his stay in the city, which had been accepted; but, after the jury was impaneled, and after the two meals were taken, the juror went elsewhere. No improper influence is alleged, or prejudice shown. The high character, for intelligence and integrity, of both juror and counsel, is conceded. Under these circumstances we do not feel authorized to interfere with the verdict. No complaint is made as to the amount of it.

Affirmed.