STAFFORD v. THE CITY OF OSKALOOSA.

1. **Evidence:** NEGLIGENCE AND CARE: VERDICT. *Held,* that the evidence in relation to the defendant's negligence and the plaintiff's care, was sufficient to authorize the jury, without passion or prejudice, to find for the plaintiff.

2. **Damages:** PERSONAL INJURIES: PREJUDICIAL ERROR. Where, in an action for personal injuries, the court instructed the jury that their verdict might be for a sum much larger than the amount actually claimed, the instruction was erroneous, and to authorize this court to disregard the error, it should clearly appear that no prejudice resulted therefrom.

3. **Municipal Corporations:** STREETS: NEGLIGENCE. Where a street has been opened for public use and travel throughout its entire width, it then becomes the duty of the city to keep it in a reasonably safe condition for the entire width thereof from sidewalk to sidewalk.

4. **Damages:** EXPENSES FOR: MEDICAL TREATMENT: PROOF OF. Where there was no evidence tending to show the expenses incurred by plaintiff for medical care and treatment, an instruction authorizing the jury to allow damages for such expenses, was erroneous.

5. ———: NEGLIGENCE: KNOWLEDGE OF. The knowledge, or want of knowledge, on the part of the plaintiff that his friend, who was driving

when the accident occurred, was an habitually careless driver, is immaterial. If his friend was negligent on this occasion, he cannot recover.

6. **Jury**: MISCONDUCT OF: VERDICT SET ASIDE. The evidence in relation to the alleged misconduct of a juror considered. *Held*, that while it does not appear in this case that any wrong was intended or any prejudice wrought, prudence and a desire to secure the pure administration of the law require that the verdict be set aside.

### *Appeal from Mahaska Circuit Court.*

### FRIDAY, MARCH 24.

ACTION to recover damages for personal injuries sustained by plaintiff, on account of an obstruction in a street of the city, which caused plaintiff to be thrown from a sleigh in which he was riding. There was a verdict and judgment for plaint iff in the sum of $5,500. Defendant appeals.

*M. E. Cutts, T. H. Davenport* and *Lafferty & Johnson,* for appellant.

*John T. Lacy* and *Bolton & McCoy,* for appellee.

BECK, J.—I. A sleigh in which plaintiff was riding with a friend, in the city of Oskaloosa, was turned over by a small mound in the street, which had been made by the street commissioner depositing the earth removed in cleaning the street crossing. Plaintiff suffered very severe injuries by the fall, from the fracture of a bone of the thigh, which will, probably, cause him to be a cripple for life. There is no dispute, or at least no conflict in the evidence as to plaintiff's injuries, and as to the fact that the sleigh was turned over by reason of being driven upon the little mound of earth. The contention of the parties involves the negligence of the defendant in permitting the mound to remain, and the want of care of plaintiff's friend, who was, at the time, driving the horse hitched to the sleigh. Various objections to the judgment, based upon alleged erroneous rulings of the court, are discussed by coun-

sel. Those which we think demand our attention will be considered in the order we find them discussed in the printed argument of defendant's counsel.

II. Counsel insist that the evidence fails to support the verdict, especially that there was no sufficient proof of defend-

**1. EVIDENCE:** negligence and care: verdict.

ant's negligence and plaintiff's care. We cannot concur in this conclusion, but are of the opinion that there was evidence upon these branches of the case sufficient to authorize the jury, in the exercise of their discretion, without passion or prejudice, to find for plaintiff.

III. The court in the first instruction informs the jury that plaintiff claims damages in the sum of $15,000, and in

**2. DAMAGES:** personal injuries: prejudicial error.

another instruction directs them that their verdict may be in any sum less than $15,000. The original petition claims damages in the sum of $5,000. An amended petition for the same injuries, set out in the original petition, claims to recover $10,000. There is no allegation that the sum claimed in the amended petition is in addition to the claim first made. Indeed, the language of the last pleading is to be understood as alleging that the claim for $10,000 damages covers all the injuries sustained by plaintiff. The court therefore erred in the instructions referred to above. It may not clearly appear that the error in fact wrought direct and certain prejudice to defendant. To authorize us to disregard the error it should clearly appear that no prejudice resulted therefrom. See case cited in 2 Withrow & Stiles' Digest, p. 813, section 162. In view of the fact that the judgment must be reversed on other grounds, we need not determine whether the record fails to show that no prejudice resulted from the error.

IV. An instruction holds that it is the duty of the city to keep its streets, which are opened to public use, in a rea-

**3. MUNICIPAL** corporations: streets: negligence.

sonably safe condition "for the entire width thereof from sidewalk to sidewalk." This rule we think is correct. See *Rusch v. Davenport*, 6 Iowa,

455; 2 Thompson on Negligence, 766. If a street be opened for public travel for but a part of its width and the other part is not in a condition to be used by the public, the city would not be chargeable with negligence for failing to improve the whole of the street, or for accidents occurring to those attempting to use the part not improved. But no such case is presented by the record before us. The street for its whole width was opened for public travel. It was, therefore, the duty of the city to keep it reasonably safe for its entire width.

V. In the eighth instruction the jury were directed to consider, in estimating damages, the expenses incurred by plaint-

4. DAMAGES: excuse for: medical treatment: proof of.

iff for his treatment by surgeons and physicians. There was no evidence whatever tending to show the expenses so incurred by plaintiff. The instruction, therefore, in authorizing the jury to allow damages for such expenses is erroneous. See *Reed v. C., R. I. & P. R. Co., ante,* p. 23.

VI. Evidence was introduced tending to show that plaintiff's friend, who was driving when the accident happened, was

5. ——: negligence: knowledge of.

habitually a careless driver. In the second instruction asked for by plaintiff, the jury are informed that the evidence was admitted to show notice to plaintiff of his friend's careless manner of driving. We think the evidence was not admitted for that purpose, for if the driver was negligent plaintiff could not have recovered whether he did or did not have notice of prior negligence, or habits of negligence, of the driver. The fourth instruction expresses the thought that the knowledge of plaintiff of the careless habits of the driver was an element to be considered in determining whether these "careless habits" supported the defendant's defense. We think the drivers "habits of carelessness" had nothing to do with the case further than as tending to show that the driver was negligent when the accident happened.

The jury could more readily infer negligence on that occassion, if the driver was habitually careless, than if he had always been prudent.

The want of knowledge on the part of plaintiff, of the driver's carelessness, would not secure him the right to recover, notwithstanding the driver's want of care. The instructions in these respects are erroneous.

Other instructions given to the jury, we think, are correct. The instructions asked by defendant and refused were, so far as they are correct, covered by the instructions given.

VII. The defendant moved to set aside the verdict and for a new trial for, among other reasons, the misconduct of one of the jurors. The charge of misconduct is based upon the following facts, as shown by the proof, about which there is no dispute.

6. JURY: misconduct of: verdict set aside.

During the trial a Sunday intervened. A juror was desirous of visiting his home and was informed by one of the attorney's of plaintiff that, if he would stay at the house of the attorney until morning, he would be taken home by the attorney, who intended, with his wife, to make a visit in that neighborhood. To this he assented. The next day the juror and the attorney, with his wife, pursuant to this arrangement, went together in the attorneys conveyance to the juror's home, a distance of about sixteen miles. It was then made known to the juror that the visit was pursuant to a prior arrangement between the attorney and the juror's wife in order to celebrate the anniversary of the juror's birth. The attorney brought a chair with him, which he presented to the juror. Other friends were present at the juror's house. After spending the day in social intercourse the juror returned with the attorney and his wife, and slept at their house that night. It is shown that no conversation was had in regard to the case, and that the juror and the attorney and their families had been a long time friends. We discover no evidence authorizing the con-

clusion that either the juror or the attorney intended any wrong. The good character and high respectability of neither are questioned.

We are united in the opinion that the verdict ought not to stand in view of the transactions and association between the attorney and juror while the trial was pending. It would be extremely unsafe for the pure and correct administration of the law, through trial by jury, to permit such transactions. In this case the high characters of the juror and attorney may offer an assurance that no wrong was done and no prejudice wrought. But the transactions were in the way of temptation, which the law will not permit jurors and attorneys to pursue.

While good men, strong to resist temptation, may do no evil by such a course of conduct, weaker men may fall. The law has but one common rule to be applied to the good and bad, to the strong and the weak.

To sanction the transaction in question would bring disgrace upon the administration of the law. There is absolute safety in the rule we adopt; there is danger in a different one. "Prudence and a desire to secure a pure administration of the law demand that we adhere to it." *Ryan v. Harrow*, 27 Iowa, 494.

It is well said in *Bradbury v. Coney*, 62 Me., 223 (225), a case involving the question of the misbehavior of a juror, that "in the trial of a cause the appearance of evil should be as much avoided as evil itself. It is important that jurymen should be devoid of prejudice. It is hardly less so that they should be free from the suspicion of prejudice."

The facts of this case distinguish it from *Koester v. The City of Ottumwa*, 34 Iowa, 41. The intercourse between the juror and attorney in that case was brief and trifling, when compared with the intimate association and transactions disclosed by the evidence found in the record before us. That

case went to the very verge of indulgence to jurors and attorneys; we can go no further.

For the errors pointed out in the foregoing discussion, the judgment of the Circuit Court must be

REVERSED.