**METROPOLITAN PAVING COMPANY,** Inc., a corporation, Gill Construction Company, a corporation, and Tecon Corporation, a corporation, formerly joint venturers doing business as Metropolitan-Gill-Tecon, Plaintiffs-Appellees, Cross-Appellants,

v.

The **INTERNATIONAL UNION OF OPERATING ENGINEERS,** an unincorporated association, Defendant-Appellant, Cross-Appellee.

Nos. 41–70, 42–70.

United States Court of Appeals, Tenth Circuit.

March. 9, 1971.

Rehearing Denied April 8, 1971.

**302**

L. N. D. Wells, Jr. and Otto B. Mullinax, of Mullinax, Wells, Mauzy & Collins, Dallas, Tex. (J. Albert Woll, Washington, D. C., with them on the brief), for appellant.

Bert Barefoot, Jr. and John A. Claro, Oklahoma City, Okl. (Edward H. Moler, Oklahoma City, Okl., with them on the brief), for appellees.

Before PICKETT, HILL, and SETH, Circuit Judges.

SETH, Circuit Judge.

The appellees-employers commenced this action for damages against the appellant International Union, alleging a violation of 29 U.S.C. § 187, and 29 U.S. C. § 158(b) (4). The case was tried to a jury which returned a verdict for plaintiffs in the amount of $163,224.29.

The defendant union has appealed asserting lack of jurisdiction, several procedural errors, errors in instructions, and insufficient evidence to support the verdict. The plaintiffs took a cross-appeal, in which they argue that the verdict was not based upon the proper theory and was grossly inadequate.

Plaintiffs- appellees- cross- appellants, Metropolitan Paving Company, Inc., Gill Construction Company, and Tecon Corporation, formerly joint venturers doing business as Metropolitan-Gill-Tecon (MGT), were awarded a contract by the Cities of Aurora and Colorado Springs, Colorado, to lay approximately fifty miles of pipeline near Buena Vista, Colorado. Agreements were entered into by MGT and local affiliates of the four labor unions basic to that job—Teamsters, Laborers, Carpenters, and Operating Engineers.

While the job was in progress, MGT acquired two Barbour-Greene archezodial trenching machines. Members of Local No. 9 of the Operating Engineers began operating the machines, but a disagreement arose at the outset as to whether or not MGT was required to provide, in addition, an oiler or apprentice operating engineer, from the Operators' Union, for each of these machines. MGT took the position that the agreement with the

Engineers did not provide for such oilers and refused to assign them. However, MGT did assign to one machine an employee, a member of the Laborers Union, to assist one of the operators for a period of two weeks before the strike.

In protest over the failure of MGT to assign an oiler from its local to these machines, Local No. 9 engaged in a strike from May 12 to June 2, 1965. During that strike the defendant International Union sent its representative, W. E. Magruder, to the jobsite to investigate and attempt to arrange some solution to the dispute. He attended several meetings with members of Local 9 as well as with representatives of both the Union and MGT during the course of the strike. The parties here sharply dispute the nature of Mr. Magruder's role in the strike. Appellant contends that at all times Mr. Magruder was trying to get the men of Local 9 back on the job. Appellees disagree and predicate the liability of International primarily on the ground that Mr. Magruder actually induced or encouraged the strike or its continuation.

It is MGT's position that this strike had an "object" precluded by 29 U.S.C. § 158(b) (4) (D) because it was a strike for the purpose of forcing MGT to reassign work from the Laborers to the Operators, therefore presenting a jurisdictional dispute. MGT contends that it suffered considerable damage because of this strike, and in its cross-appeal urges that the jury was improperly constituted and awarded grossly inadequate damages. Appellees, therefore, request a new trial on the issue of damages alone, while appellant seeks a new trial on all issues as well as a dismissal for lack of federal jurisdiction.

Initially, we must consider appellant's claim that this action should be dismissed for lack of federal jurisdiction. The complaint in this action is based on 29 U.S.C. § 187, the jurisdictional counterpart of 29 U.S.C. § 158(b) (4). Appellant, however, contends that since the complaint alleges a conspiracy between International and Local 9, it does not state a claim under 29 U.S.C. § 158(b) (4).

■■ The statute allegedly violated by International does not, by its terms, proscribe conspiracy. Appellant's argument is that the complaint does not as the statute requires allege that International "engaged in," "induced," or "encouraged" the strike. The illegal acts alleged in the complaint are said to have been in furtherance of a conspiracy; however, specific acts were alleged to have been performed by International which the statute prohibits. The allegation of conspiracy under these circumstances is surplusage. Whether or not the plaintiffs are able to show that the defendant engaged in specific acts in violation of the statute goes to the merits of the case, not to jurisdiction. A fair reading of the complaint indicates sufficient allegations of specific acts prohibited by the statute to bring the action within the jurisdiction of the federal court under 29 U.S.C. § 187. Further as to this point, the case was properly submitted to the jury.

■■ Appellant also urges a jurisdictional defect based on the absence of proof that the industry here involved affects interstate commerce. It is not clear from the jurisdictional statute, 29 U.S.C. § 187, or the cases decided thereunder, at what point the question of "affecting commerce" is to be decided. At the trial of this matter, the question of "effect on commerce" was one of the elements of the plaintiffs' case submitted to the jury. In considering whether or not there is federal jurisdiction, however, the procedure is to look to the face of the complaint to see that all jurisdictional requirements have been alleged and that such allegations are not frivolous. Bell v. Hood, 327 U.S. 678, 66 S. Ct. 773, 90 L.Ed. 939 (1946). The complaint in this action alleges that the industry involved affects commerce in its utilization of equipment and machinery and otherwise, and this is sufficient for these purposes. See National Labor Relations Board v. Denver Building & Con-

struction Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284 (1951). The jury finding of an "effect on interstate commerce" concerns plaintiffs' proof of essential elements for recovery under 29 U.S.C. § 158. We must conclude that this action was properly within the jurisdiction of the trial court.

■ Appellant raises two objections based on the requirements of the pertinent statute, 29 U.S.C. § 158(b) (4) (D). It contends that the employer here was not engaged in interstate commerce and that it was facing no jurisdictional dispute or that an object of the strike was at least in part an attempt to force an employer to reassign certain work. Both of these issues were submitted under suitable instructions to the jury. The jury found that the industry here was engaged in commerce and that the strike had a proscribed object. These facts and the dispute surrounding them were one of the central issues of the trial. The record shows that the matters were fully developed. There is a wide difference between the parties as to whether there was a jurisdictional dispute. The record however demonstrates that an employee of a union other than the Engineers Union was performing the duties as a helper to the operator of the trencher at the time the strike began and when the Engineers took the strike route to force the assignment of a member of their union to the position. The record also shows informal meetings between members of the Laborers Union and the Engineers Union over the position of the helper. In brief there was sufficient evidence to support the determination made by the jury on this issue. The record further shows that the instructions given by the trial court on this issue are accurate statements of the law. We find no error on this issue.

The evaluation of the activities of Mr. Magruder, the representative of appellant, as these acts related to the then state of affairs on the jobsite and at the union meetings was properly for the jury. There was testimony that Mr. Magruder had said at a union meeting that there would "have to" be an oiler on the trencher, and thereby to cause the reassignment of a job. There was also testimony that he had told the leaders of the local to have a "good" strike if they were going to have one. This, and the related evidence including the beginning of threatened violence and the presence of weapons among the strikers at the site, was sufficient basis for the jury's action.

These are fundamental fact issues which again were properly resolved by the jury under proper instructions. Little more need be said under these circumstances.

■ Appellant has also challenged as improper the removal of one of the jurors and substitution of an alternate by the court just as the jury prepared to deliberate. The removal was based on a report from the bailiff that he had heard the juror in question remark that he did not want to be on the jury and that he had some fear for his job, since he was a union member. The juror was removed immediately by the court and the alternate juror replaced him. Appellant urges that the action of the court in summary fashion deprived it of a properly constituted jury. As appellant points out, the appellate courts have a responsibility to see that jury selection procedures are properly adhered to. Abbott v. Mines, 411 F.2d 353 (6th Cir. 1969). Furthermore, as noted in that case, the controlling issue is not whether a party was actually prejudiced by the resultant jury, but rather whether the adopted procedure tends to weaken the institution of a jury trial. Rule 47(b), Fed.R.Civ.P., provides that alternate jurors " * * * shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties." Neither the rule nor the statutory provisions collected at 28 U.S.C.A. §§ 1861–1874 set out specific procedural guidelines for such cases. Thus the question is whether or not the trial judge's removal of the juror tended to undermine the constitution of the jury.

We think it clearly did not. There was sufficient cause appearing for the action taken. In United States v. Chapman, 158 F.2d 417 (10th Cir. 1947), this court stated that " * * * an interested party to a lawsuit has no vested right in any particular juror. The right of challenge is the right to exclude incompetent jurors, not to include particular persons who may be competent." The record shows that this juror was removed because his reported remarks suggested a possible bias and an inability to objectively perform the duties required of him. We find no error.

Appellant argues further that a settlement agreement between the employer and Local 9, entered into on May 28, 1965, released the claim of the employer. The trial judge, confronted with this same argument, found that the settlement agreement was not intended to, and was not broad enough to be regarded as a complete release from liability for past damages. We agree with that finding. The obvious purpose of the agreement was to end the strike and settle the dispute over the hiring of oilers for the duration of the job. There is not the slightest hint that the employer intended by that agreement to waive or release any claims it might have as a result of the strike.

The appellees argue by their cross-appeal that the jury award of $163,244.29 does not represent nominal damages, but is so grossly inadequate that it should be set aside. The jury by special verdict showed the elements in the total award as follows:

| | |
|---|---|
| "Labor costs | $ 14,521.99 |
| Job overhead cost | 2,178.30 |
| Supervisory and Engineering | 2,301.96 |
| Protective and Guard Services | 4,459.78 |
| Rental Value of Equipment rendered idle | 135,699.95 |
| Taxes and Insurance | None |
| Profits Lost | 4,062.31" |

There was testimony by a witness for the appellees who was an accountant to show the rental value of equipment. This value was based by him on a rental table generally used in Colorado at the time. His testimony covered all the equipment being used by appellees on the job. This testimony, the appellees here urge, was only to show the damages which occurred because the job, by reason of the strike delay, could not be finished before winter and had to be shut down until spring. The particular testimony as it appears in the record had reference to such a protracted delay, but it was nevertheless applicable to any delay by reason of the use of the standard tables. The jury did not agree that the protracted delay, if there was one, was caused by the strike, and apparently instead it assessed damages for some period of delay it found was caused by defendant. It is not necessary to demonstrate mathematically how the jury arrived at its verdict. The appellant says the figure was "out of thin air," while the appellees suggest that it may have been only for the actual days of the strike and this is not what appellees asked for. However, under the record the verdict was well within the testimony admitted and there is otherwise no reason to set it aside.

Appellant also urges that the District Court for the Western District of Oklahoma erred in refusing to transfer this action to Colorado pursuant to 28 U.S.C. § 1404(a). In order to find error in the refusal to transfer, it must appear that there was a clear abuse of discretion by the trial judge. Texas Gulf Sulphur Co. v. Ritter, 371 F.2d 145 (10th Cir. 1967). There is no such abuse in this case. See also Headrick v. Atchison, T. & S. F. Ry. Co., 182 F.2d 305 (10th Cir. 1950). The judge evaluated the pros and cons and exercised his discretion.

As to the issue relating to the period of limitations, the events giving rise to this action occurred in May and June 1965. The original complaint was filed in the United States District Court on January 23, 1967. On January 25, 1967, service was made on Arland B. Canny,

the Oklahoma City representative of defendant International. That summons referred to Canny as the defendant rather than International. The praecipe was correct as were other papers served with the summons. Defendant's motion to quash service was granted and plaintiffs were given leave to amend the summons. On June 2, 1969, the summons was amended and the trial began. The record shows that the original complaint, which correctly names the parties to this action, was also served on Canny on January 25, 1967.

Appellant thus argues that the trial court erred in allowing the summons to be amended on June 2, 1969, as above described. It is admitted that the court may allow such amendment pursuant to Rule 4(h), Fed.R.Civ.P., but it is urged that such amendments may only be allowed if no material prejudice results to the party against whom the process issued. In this case appellant maintains that the amendment in question, deemed by the trial judge to relate back to the original date of service, deprived it of the defense of the statute of limitations. Therefore, appellant argues that the amendment does not satisfy the requirements of harmlessness set forth in Rule 4(h).

 As an additional issue there is present a dispute between the parties as to the applicable statute of limitations in this case. Jurisdiction in this case is based on 29 U.S.C. § 187, and the right sought to be enforced is thus a federally created right. In such cases, as opposed to another possible result in some diversity cases, the filing of the complaint commences the action and tolls the applicable statute of limitations. Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949); Hoffman v. Halden, 268 F.2d 280 (9th Cir. 1959). The complaint in this case was not defective, it was filed on January 23, 1967, and served on January 25, 1967. There is no contention that defendant was in any way prejudiced by any lack of notice, if there was any.

 The original plaintiff in this action was designated as Metropolitan-Gill-Tecon, a joint venture composed of Metropolitan Paving Company, Inc., Gill Construction Company, and Tecon Corporation. All participants in the joint venture were corporations. On June 18, 1969, during the trial of this action, motion was made and granted for an order amending the complaint and all pleadings to show the corporations rather than the joint venture as parties plaintiff. It was further ordered that such amendment would relate back to the filing of the complaint in this action. In allowing this amendment, the court did not abuse the discretion implied in Rules 15(c) and 17(a), Fed.R.Civ.P. Since it was clear from the outset that the three corporations were the real parties in interest in this matter, there was no prejudice to the defendant in granting the motion to amend. The fact that an applicable statute of limitations may have run before the real parties were substituted is not significant where the change is merely formal and in no way alters the known facts and issues on which the action is based. Missouri, K. & T. Ry. v. Wulf, 226 U.S. 570, 33 S.Ct. 135, 57 L.Ed. 355 (1913); see also, Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

The appellant raises an additional procedural problem which relates to the capacity of Tecon Corporation to bring and maintain this action in the United States District Court in Oklahoma as one of the parties. The effect of the amendment as to parties was to remove the joint venture as a party, leaving Tecon and the other two corporations as the parties-plaintiff which were the real plaintiffs from its inception. It is alleged by appellant that Tecon was precluded from instituting and maintaining this action because it lacked capacity to sue in the courts of Oklahoma. The force of this argument

allegedly derives from Wilson v. Williams, 222 F.2d 692 (10th Cir. 1955). In Wilson, this court held that:

"* * * [W]here a foreign corporation is thus barred from maintaining an action in the courts of a state until it has obtained a certificate of domestication, it cannot maintain an action in the United States Court within the state without having obtained such a certificate."

In support of that proposition we cited Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949).

Admittedly, the broad language of the Wilson case does appear to cast doubt on the capacity of Tecon to maintain this action. Of course, it may be, as appellees argue, that the Oklahoma statute, 18 Okla.Stat. § 1.201, would not apply to Tecon on the ground that Tecon did not really transact business in Oklahoma subsequent to its withdrawal in 1965. The defect in appellant's argument, however, stems from an incorrect application of the rule in the Woods case. The holding in Woods was in a diversity action where it was held that if a State does not permit a suit on a non-federal claim, federal courts sitting in diversity cases will do likewise. In the case before us, however, where the right asserted is instead federally created, the Woods rule does not apply and the Oklahoma statute does not operate to bar such an action. Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947); Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946); Lyon v. Quality Courts United, 249 F.2d 790 (6th Cir. 1957); 3A Moore, Federal Practice, § 17.21 at 774 (2d ed. 1970). It should also be noted that R. V. McGinnis Theatres & Pay T.V., Inc. v. Video Independent Theatres, Inc., 386 F.2d 592 (10th Cir. 1967), is not contrary. In McGinnis the corporation involved was not merely without domestication, it had been dissolved in Oklahoma, the State where it had been organized. There is no contention in our case that Tecon has been dissolved by the State in which it was organized. Tecon, therefore, did not lack capacity to bring and maintain this action to enforce a federally created right in the United States District Court.

Affirmed.