**OMAHA BANK FOR COOPERATIVES, A federally chartered instrumentality, Appellee,**

**v.**

**SIOUXLAND CATTLE COOPERATIVE, Appellant,**

Bunger Construction Co., Inc.; Plymouth Ready Mix Concrete Co., Inc.; Charles Neuroth; Plymouth County, Iowa; Godberson-Smith Construction Co.; Carl J. Schulte Construction Co.; Casler Electric Co., Defendants,

**Robert Zuber, Appellee,**

**and**

**George Weston, Defendant to cross-petition.**

Nos. 65207, 65208.

Supreme Court of Iowa.

May 13, 1981.

Steven A. Carter of Carter, Sar & Edmonds, Sioux City, for appellant Siouxland.

Gerald P. Laughlin and Robert J. Banta of Baird, Holm, McEachen, Pedersen, Hamann & Haggart, Omaha, Neb., and L. W. Rosebrook of Ahlers, Cooney, Dorweiler, Haynie & Smith, Des Moines, for appellee Omaha Bank.

George F. Madsen of Shull, Marshall & Marks, Sioux City, for appellee Zuber.

Considered by REYNOLDSON, C. J., and LeGRAND, McCORMICK, McGIVERIN, and SCHULTZ, JJ.

McGIVERIN, Justice.

Siouxland Cattle Cooperative (Siouxland) appeals from an adverse judgment on its damage claim in a law action for fraud against Omaha Bank for Cooperatives (Omaha Bank) and Robert Zuber, a bank officer, and from the trial court's order for a sheriff's deed to the bank in a foreclosure action. Siouxland claims that the trial court erred in failing to replace a juror with an alternate, in its instructions to the jury, and in ruling that Siouxland has lost a right of redemption from the foreclosure sale. We reverse in the law action and affirm in the foreclosure action.

This case began in 1976 when Omaha Bank filed a petition in equity to foreclose a mortgage on land owned by Siouxland. In 1977 Siouxland filed a separate action at law against the bank and Robert Zuber claiming that they fraudulently misrepresented that the bank would provide Siouxland with continuing financing to establish a cattle feedlot operation. The fraud claims were consolidated with the equity action to foreclose the mortgage.

The law action for fraud was tried first. The jury returned a verdict in December 1977 for Siouxland of $450,000 in compensa-

tory damages and $250,100 punitive damages. Siouxland then did not contest the foreclosure action and consented to judgment against it in February 1978 on the bank's claim. On February 18, 1980, the bank purchased the real estate at a sheriff's sale and received a sheriff's certificate.

Omaha Bank and Zuber appealed the law judgment against them. The court of appeals decided that the jury had been improperly instructed on Siouxland's fraud claim and remanded for a new trial.

Siouxland's fraud claim was retried beginning in February 1980. During this trial, a juror allegedly engaged in misconduct by purchasing drinks for, and conversing with, the bank's lawyers. Siouxland also claims that the court improperly instructed the jury on the standard of proof on the fraud claim.

The retrial resulted in a jury verdict for the bank and Zuber on Siouxland's claim for fraud. After the verdict, the bank moved for issuance of a sheriff's deed to the real estate upon which it had foreclosed, claiming that Siouxland had lost its right of redemption under section 628.4, The Code (party who has taken appeal or stayed execution loses redemption rights).

On April 24, 1980, the trial court overruled Siouxland's post-trial motions in the law action and granted the bank's motion for a sheriff's deed in the equity action. § 626.95. Siouxland appeals. Other parties in the case defaulted or are not participating in the appeal.

The following issues are presented for review:

1. Did the trial court err in denying Siouxland's request to remove a juror, who had bought drinks for the bank's lawyers during trial, and replace him with an alternate?

2. Did the trial court properly instruct the jury that Siouxland had to prove its claim for damages for fraud by "a preponderance of clear, convincing and satisfactory evidence"?

3. Was the bank entitled to a sheriff's deed to the land purchased at execution

sale because Siouxland was not entitled to redeem?

■ I. *Juror misconduct.* Siouxland claims that the trial court should have granted its motion to replace a juror with an alternate during the retrial of the law action. Iowa R.Civ.P. 189, The Code 1979. The claim arises from the conduct of juror Adamson. The facts surrounding the misconduct appear in affidavits from the lawyers involved and Adamson. The juror is competent to testify about "external matters improperly brought to bear on the deliberations." *State v. Rouse*, 290 N.W.2d 911, 916 (Iowa 1980); *Harris v. Deere & Co.*, 263 N.W.2d 727, 729–30 (Iowa 1978); *Wright v. Illinois & Mississippi Telegraph Co.*, 20 Iowa 195, 210 (1866).

After a day at trial on March 3, 1980, Omaha Bank's lawyers, Robert J. Banta and Gerald P. Laughlin, stopped for dinner in Merrill, Iowa. After finishing dinner, they entered the bar portion of the restaurant to pay their bill. Juror Adamson was seated at the bar. He offered to buy the lawyers a drink and they declined. Adamson was insistent and offered again. The lawyers then sat at a booth near the bar and received a drink, courtesy of Adamson. Adamson introduced the lawyers to other patrons and they all conversed about various subjects. There is no evidence that the pending trial was discussed.

On March 6 attorney Laughlin informed the court, in the presence of lawyers for other parties, of the contact with juror Adamson. We do not have a transcript of the meeting but apparently the trial court concluded that nothing improper had occurred.

On March 11 Siouxland's attorney, Steven A. Carter, reported to the court that he had advised his client to move for a mistrial because of the misconduct. Carter also stated that Siouxland did not want a mistrial and wanted to proceed with the jury. Because Siouxland would not follow Carter's advice to move for a mistrial, Carter requested the court, before the case was submitted to the jury, to remove Adamson and replace him with an alternate juror under Iowa R.Civ.P. 189, as then in effect.

The trial court denied the request, stating, "I said at the time there was nothing wrong with it and found that, and I do now." The court also indicated that a motion for a mistrial was the only proper procedure to follow.

After the jury returned a verdict for the bank and Zuber, Siouxland moved for a new trial because of misconduct by juror Adamson, who had become foreman of the jury. Iowa R.Civ.P. 244(b). The trial court overruled the motion primarily because Siouxland had not moved for a mistrial during trial.

■ The juror's offer of drinks and the lawyers' acceptance was clearly misconduct by all of them. Adamson, in speaking to the lawyers and offering and buying them drinks, violated the standard admonition given by the court to refrain from contact with the lawyers involved in the case. The bank's lawyers violated their ethical obligation prohibiting communication with a juror during trial unless it is in the course of official proceedings. Iowa Code of Professional Responsibility DR 7–108(B) and (C). *See, e. g., State v. Neville*, 227 Iowa 329, 288 N.W. 83 (1939); *Henn v. Finley*, 201 N.W. 783 (Iowa 1925); *Oleson v. Meader*, 40 Iowa 662 (1875).

■ Omaha Bank and Zuber apparently concede that the contact was misconduct but argue that Siouxland has waived any claim for a new trial. The waiver argument is based on Siouxland's refusal to move for a mistrial after discovering the misconduct. A party learning during trial of misconduct by a juror must complain to the trial court rather than wait for the outcome and then move for a new trial after losing. *Rudolph v. Iowa Methodist Medical Center*, 293 N.W.2d 550, 555 (Iowa 1980); *State v. Christiansen*, 231 Iowa 525, 1 N.W.2d 623 (1942); *Ricker v. Davis*, 160 Iowa 37, 139 N.W. 1110 (1913).

■ Siouxland declined to move for a mistrial during trial. The record does not indicate, however, that Siouxland elected to wait until the adverse verdict before complaining to the court about the misconduct.

Rather, before the case was submitted for jury decision, Siouxland requested the court to replace Adamson with an available alternate. Iowa R.Civ.P. 189, The Code 1979. We conclude that Siouxland adequately made its record to the court by requesting that an alternate replace the offending juror.

■ Rule 189 provided at the time that "alternate jurors shall, in the order they were drawn, replace any juror who becomes unable to act, or is disqualified, before the jury retires." We conclude that the rule may be used to prevent a mistrial by using alternates to replace jurors who engage in misconduct. *See United States v. Dominguez*, 615 F.2d 1093 (5th Cir. 1980) (comparable federal rule of criminal procedure may be used "whenever the judge becomes convinced that the juror's abilities to perform his duties become impaired"); *Anderson v. Dun & Bradstreet, Inc.*, 543 F.2d 732 (10th Cir. 1976) (juror who danced with employee of defendant replaced); *United States v. Cameron*, 464 F.2d 333 (3d Cir. 1972) (sleeping juror); *Kalianov v. Darland*, 252 N.W.2d 732, 736–38 (Iowa 1977); *State v. Coffee*, 182 N.W.2d 390, 396 (Iowa 1970). We note that rule 189 has been revised since this trial. 1980 Session, 68th G.A., ch. 1207. Effective July 1, 1980, the rule provides for striking jurors who become unable to act or are disqualified rather than replacing them with alternates.

■ In denying Siouxland's request to replace juror Adamson, the trial court was exercising its discretion. A decision on whether to replace an alternate will not be reversed unless there has been an abuse of discretion. *See Dominguez*, 615 F.2d at 1095; *Hathorn v. Trine*, 592 F.2d 463 (8th Cir. 1979) (per curiam). We conclude that, on the facts of this case, the trial court abused its discretion in failing to replace juror Adamson.

As stated above, the contact was clearly misconduct. The question is whether there was an abuse of discretion in failing to replace the juror because of it. The trial court's decision was partly based on its conclusion that it could not "pluck" jurors off the case and replace them with alternates. To the extent that the court based its decision not to replace the juror on lack of authority to do so, we find error. Iowa R.Civ.P. 189.

The trial court also declined to replace the juror because it found "there was nothing wrong with it." The trial court apparently concluded that since the meeting was inadvertent and the lawyers offered nothing to the juror, the contact was harmless. The bank and Zuber argue that Siouxland has failed to show that the contact was calculated to influence the verdict and that it is reasonably probable it did. Therefore, they claim that the trial court properly refused to replace the juror. They analogize to cases where we reviewed a court's failure to grant a new trial because of juror misconduct. *Fleener v. Board of Supervisors*, 246 N.W.2d 335, 338 (Iowa 1976); *Mead v. Scott*, 256 Iowa 1285, 1290, 130 N.W.2d 641, 644 (1964).

▪ ■ Although the standards for determining when a new trial should be awarded and when a juror should be replaced are similar, a trial court may more readily find misconduct calculated to influence a juror when the only question is whether an available alternate should replace the juror. *See Metropolitan Paving Co. v. International Union of Operating Engineers*, 439 F.2d 300 (10th Cir. 1971), *cert. denied*, 404 U.S. 829, 92 S.Ct. 68, 30 L.Ed.2d 58 (1971) (where juror's remarks "*suggested a possible* bias and an inability to objectively perform the duties required of him," replacement proper) (emphasis added).

In this case, we conclude that the trial court abused its discretion because there is not substantial evidence to support a finding that the contact was not prejudicial to Siouxland. *See Paige v. City of Chariton*, 252 N.W.2d 433, 437 (Iowa 1977); *Fleener*, 246 N.W.2d at 338. Adamson and the lawyers did not merely meet and exchange greetings, but rather had an extended conversation. *Cf. Stam v. Cannon*, 176 N.W.2d 794, 800 (Iowa 1970) (brief communication where judge told deliberating juror to read

instructions improper but "not of sufficient significance to overturn the verdict"); *Dakovich v. City of Des Moines*, 241 Iowa 703, 711, 42 N.W.2d 511, 516 (1950) (brief contact between jurors and plaintiff did not require new trial). The lawyers accepted a drink and participated with the juror in the gathering in the bar. The circumstances surrounding the contact are the only bases upon which to determine whether the contact may have influenced the juror or the jury. *See State v. Hahn*, 259 N.W.2d 753, 757 (Iowa 1977).

█ In addition, we conclude that the fraud claim must be retried to "zealously [guard] the utter independence of jurors." *State v. Carey*, 165 N.W.2d 27, 29 (Iowa 1969). We simply cannot allow a foreman of a jury to purchase drinks during trial for lawyers representing a party. In cases of such gross impropriety, even if the meeting were unintentional, we are not only concerned with injustice to particular litigants but also with the appearance of impropriety that casts doubt on our jury system. *Carey*, 165 N.W.2d 29–30; *Daniels v. Bloomquist*, 258 Iowa 301, 306, 138 N.W.2d 868, 872 (1965) (judge's contact with juror); *Lynch v. Kleindolph*, 204 Iowa 762, 764, 216 N.W. 2, 3 (1927); *Stafford v. City of Oskaloosa*, 57 Iowa 748, 753, 11 N.W. 668, 670 (1882). Attempts to ingratiate one side to a juror by extended conversation and acceptance of drinks must be condemned.

II. *Instructions on fraud.* Siouxland's claim against the bank and Zuber was that they fraudulently represented to it that the bank would provide continuing financing for the cattle feedlot. The fraud claim was at law for damages.

At the second trial in 1980, the court instructed the jury that Siouxland had the burden of establishing the elements of fraud "by a preponderance of clear, convincing and satisfactory evidence." The court explained that " 'preponderance' of the evidence has been previously defined, and relates to the quantity of the evidence. 'Clear, convincing and satisfactory' relates to the quality of the evidence, and is required in fraud cases to overcome the general and reasonable presumption in favor of honesty." Siouxland asserts that these instructions were improper for several reasons.

Siouxland first says that the court's instruction on the burden of persuasion—by a preponderance of clear, convincing and satisfactory evidence—is an incorrect statement of the law. A substantial portion of the brief is devoted to a review of the cases on the question. We conclude that Siouxland is precluded from raising this issue and that, in any event, the trial court properly instructed the jury on Siouxland's burden of persuasion on its damage claim for fraud.

At the first trial, in 1977, the trial court instructed the jury that Siouxland had to prove its fraud claim by "a preponderance of the evidence." In reversing the trial court and ordering a new trial, the court of appeals decided that the jury must not only be instructed on the quantity of evidence—a preponderance—but also on the quality of evidence—clear, satisfactory and convincing. The court of appeals concluded that in a fraud action for damages, an instruction on the quality of evidence is required to take into account the general and reasonable presumption in favor of honesty. We denied Siouxland's application for further review.

█ At the second trial in 1980, the trial court followed the court of appeals opinion and told the jury that Siouxland had to prove its fraud claim by a preponderance of clear, satisfactory and convincing evidence. The court of appeals decision, when unreviewed by us, is res judicata and therefore precludes the issue of the proper standard of proof. *See Universal Cooperatives, Inc. v. Tasco, Inc.*, 300 N.W.2d 139 (Iowa 1981) (court of appeals decision on inapplicability of long-arm statute final); *Sauer v. Scott*, 238 N.W.2d 339 (Iowa 1976); § 684.36, The Code 1979 (unless further review granted by supreme court, court of appeals decision final); Iowa Sup.Ct. Rule 10(e) (court of appeals decision may be cited if res judicata).

In any event, since the court of appeals opinion, we have twice confirmed that the "preponderance of clear, convincing and satisfactory evidence" standard is the appropriate one in damage actions for fraud. *Lockard v. Carson*, 287 N.W.2d 871, 874 (Iowa 1980); *Mills County State Bank v. Fisher*, 282 N.W.2d 712, 715 (Iowa 1979).

Siouxland's second challenge to the trial court's instruction is that it improperly placed a burden on Siouxland to overcome a presumption of fair dealing in addition to establishing fraud by a preponderance of clear, satisfactory and convincing evidence. The trial court instructed the jury that a certain quality of evidence— clear, satisfactory and convincing—was "required in fraud cases to overcome the general and reasonable presumption in favor of honesty." We have stated that a certain quality of evidence—clear, satisfactory and convincing—is required in addition to the usual preponderance required in civil cases to give deference to the presumption of fair dealing. *Lockard*, 287 N.W.2d at 874; *Mills*, 282 N.W.2d at 715. The trial court is not required to instruct the jury on why the burden of persuasion in a fraud case is phrased as it is. *Baker v. Mathew*, 137 Iowa 410, 418, 115 N.W. 15, 19 (1908). We do not believe the reason should be stated to the jury. However, we need not decide whether the court's instruction in this regard was reversible error because we reverse on another ground. On retrial, the court should not inform the jury of the presumption of fair dealing.

Siouxland's final challenge to the instruction is that, even if the trial court applied the correct burden of persuasion, the court did not clearly explain it to the jury. We conclude that the trial court adequately explained that the burden of persuasion in a fraud case is "qualitatively, rather than quantitatively, distinguishable from a mere preponderance of the evidence." *Mills*, 282 N.W.2d at 716. The court explained that a certain quality of evidence—clear, convincing and satisfactory—was required in a fraud action for damages. The court also distinguished the quality of the evidence required from the general burden of persuasion—a preponderance. The court previously explained that a preponderance of the evidence was "the greater weight or strength of the proof" and later referred to this as the quantity of evidence required. We conclude that the court adequately explained Siouxland's burden of persuasion to the jury.

III. *Right of redemption from mortgage foreclosure sale.* On April 24, 1980, the trial court ordered the issuance of a sheriff's deed to the real estate because Siouxland had lost its right of redemption under section 628.4. § 626.95. Siouxland claims that the trial court erred in concluding that it had no redemption rights. We conclude the court's issuance of the deed was correct.

On February 1, 1978, the court entered a judgment in favor of Omaha Bank in the foreclosure action. The judgment for the bank was for $953,637.90 plus interest, statutory attorney fees and costs. Also the mortgage was foreclosed. Siouxland did not appeal this judgment. The bank, however, did appeal the judgment against it in the law action for fraud.

The foreclosure decree provided, apparently pursuant to an agreement of the parties, that Omaha Bank could execute only upon permission from the trial court. *Cf.* § 626.7. While the bank's appeal was pending in the court of appeals, the bank applied for an order so that it could proceed to execute. On July 31, 1978, the trial court decided that it had jurisdiction to hear the request for special execution and set a hearing date. Siouxland requested this court to grant an interlocutory appeal from that order and also filed a notice of appeal as if it were a final order. Meanwhile, the trial court denied the bank's request for special execution. Therefore, this court granted Siouxland's motion to dismiss its appeal and withdraw its application for interlocutory appeal.

During these proceedings in the foreclosure action, the bank's appeal from the adverse judgment in the law action was before the court of appeals. On June 28, 1979, the court of appeals reversed the law

action and remanded for a new trial because the jury was improperly instructed.

Pursuant to the court of appeals decision, the parties began to prepare for a retrial. On November 6, 1979, the court, after another request by the bank, ordered issuance of special execution on the bank's foreclosure judgment. Siouxland vigorously contested that order and appealed to this court. On Siouxland's motion, we temporarily stayed the execution from November 20 until December 11, 1979. Other stays were also secured by Siouxland. Siouxland's claim was that the November 6 order of special execution, prior to a retrial of its fraud claim, was improper under *Harrington v. Polk County Federal Savings and Loan Association*, 196 N.W.2d 543 (1972).

The retrial of the fraud action occurred from February 26 to March 13, 1980. The jury returned verdicts for the bank. On the bank's motion, we dismissed Siouxland's appeal from the November 6 order for special execution because the verdict for the bank in the fraud action eliminated any claim by Siouxland that it might have a setoff on the foreclosure judgment.

The bank executed on its foreclosure judgment and purchased the property at a sheriff's sale on February 18, 1980. The bank moved for issuance of a sheriff's deed under section 626.95, claiming that Siouxland, by its various appeals and stays in the foreclosure action, lost its right of redemption under 628.4.[1] The trial court ordered issuance of the deed and Siouxland claims this was error.

Siouxland's claim is that under *Harrington* it had a right to prevent execution until its fraud claim was finally decided. It says that any appeals it took or stays it received in the equity action should not cut off its right to redeem because it was merely trying to protect its rights under *Harrington*. We conclude that execution was proper before the retrial of the fraud action, and that the various appeals and stays in the equity action cut off Siouxland's redemption rights.

In *Harrington* we sanctioned certain procedures to be used in a foreclosure action when a debtor asserts a compulsory counterclaim against the creditor. We attempted to strike a fair balance between the right of the creditor to foreclose and the rights of the debtor to receive a trial on the counterclaim to determine any setoff against the creditor, to appeal an adverse judgment on the counterclaim and to redeem.

To protect the right of the debtor to receive at least one trial on the counterclaim to determine any setoff in the foreclosure action, we said, "[I]t is proper for the trial court to defer entry of judgment in the foreclosure proceedings until after determination of the counterclaim." *Harrington*, 196 N.W.2d at 547. We relied on procedure for trial courts to follow suggested in *Folkner v. Collins*, 249 Iowa 1141, 1144–45, 91 N.W.2d 545, 547 (1958) and *Hedinger v. Herweh*, 239 Iowa 1146, 1148, 34 N.W.2d 202, 203 (1948).

To protect the creditor's right to foreclose, we said, "[W]here [debtors] have been granted a separate trial on a claim asserted as a law action counterclaim, any exercise of a right to appeal from an adverse decision on the counterclaim shall not forestall the foreclosure proceedings ... and the [creditor] must be permitted to proceed without awaiting the outcome of the appeal on the counterclaim." *Harrington*, 196 N.W.2d at 547.

Finally, to protect the debtor's right to redeem, we held that an appeal by the debtor of an adverse decision on the law counterclaim does not cut off the debtor's right to redeem from the sale in the foreclosure action. *Id.*

The procedure of this case is much more complicated than the facts presented in *Harrington*. *Harrington* covered the situation where the debtor was attempting to try and, upon losing, appeal an adverse

---

1. Section 628.4, The Code, provides:
   No party who has taken an appeal from the superior or district court, or stayed execution

on the judgment, shall be entitled to redeem.

judgment on a law claim while the bank foreclosed. In Siouxland's case we have foreclosure delayed during a first trial on its law action counterclaim, an appeal by the bank in the law action, a retrial of the law action and finally, as discussed in division I, the prospect of a third trial on the law action. Siouxland claims that under *Harrington* it had a right to stay execution on the foreclosure judgment until its law action was finally tried. We conclude that *Harrington* does not extend to prevent execution on the foreclosure judgment in this situation. Once a debtor receives the limited protection offered by *Harrington*—one trial on the law counterclaim—we hold the bank is able to proceed with the foreclosure proceedings.

In Siouxland's case, it received all the rights *Harrington* affords. That is, it got to try its counterclaim before the bank could foreclose on its mortgage. This is all *Harrington* requires. If we were to adopt the rule advanced by Siouxland, and allow it to stall execution on the foreclosure judgment until all appeals and retrials of the law action were determined, we would be ignoring the right of the bank to foreclose. *Harrington* recognized that if the debtor appealed an adverse judgment in the law action, the creditor must be allowed to proceed, even if the appeal resulted in a new trial. The creditor "must be permitted to proceed without awaiting the outcome of the appeal on the counterclaim." *Id.*

Having concluded that Siouxland was afforded all the protections required by *Harrington*, we must determine if various appeals it took and stays it received cut off its right to redemption under section 628.4. We conclude that Siouxland has lost its rights of redemption.

In this case Siouxland tried to get review of two rulings of the trial court in the equity proceeding. While the bank's appeal in the law action was pending before the court of appeals, Siouxland appealed the trial court's July 31, 1978, decision to hold a hearing to decide if special execution should issue. Under section 628.4, this is an appeal in the foreclosure action and cuts off Sioux-

land's right to redeem. *See First Trust Joint Stock Land Bank v. Armstrong*, 222 Iowa 425, 433, 269 N.W. 502, 506, 107 A.L.R. 873, 878 (1936) (interlocutory appeal from trial court ruling striking parts of answer in foreclosure action cuts off redemption).

In addition, Siouxland took an appeal and received stays from the November 6, 1979, order for special execution. As stated above, this order did not violate any rights under *Harrington*. We need not decide whether an appeal in a foreclosure action to protect a debtor's rights under *Harrington* would cut off redemption under section 628.4. *See Lombard v. Gregory*, 90 Iowa 682, 57 N.W. 621 (1894) (appeal by debtor of foreclosure decree, even though trial court decision reversed because creditor only entitled to lesser amount, cuts off redemption).

The trial court properly ordered issuance of a sheriff's deed to Omaha Bank.

In summary, we reverse and remand for retrial of the law action. The equity action is affirmed.

LAW ACTION REVERSED; EQUITY ACTION AFFIRMED.